http://www.va.gov/vetapp16/Files4/1630428.txt

Citation Nr: 1630428 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 12-06 445 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa

THE ISSUE

Entitlement to an evaluation in excess of 10 percent for residuals of right shoulder acromioclavicular separation excluding periods of convalescence after April 1,
2009.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

P. Olson, Counsel
INTRODUCTION

The Veteran had active military service from June 1993 to February 1997.

This matter is before the Board of Veterans' Appeals (Board) following a Board Remand in November 2014. This matter was originally on appeal from rating decisions of the VA Regional Office (RO) in Des Moines, Iowa that granted a 100 percent disability rating for periods of convalescence between December 16, 2008 and March 31, 2009, and March 16, 2010 and September 30, 2010 for service connected right shoulder disability, and denied an evaluation in excess of 10 percent for all other periods, since April 1, 2009.

In January 2010, the Veteran testified at a Travel Board hearing. A transcript of that hearing is of record.

The claims file is now entirely in VA's secure electronic processing systems, Virtual VA and Veterans Benefits Management System (VBMS).

FINDINGS OF FACT

1. The Veteran is left handed.

2. From April 1, 2009 to February 4, 2010, the residuals of right shoulder acromioclavicular separation were not manifested by limitation of arm motion at shoulder level or below; malunion, fibrous union, or nonunion of the humerus; malunion or nonunion of the clavicle or scapula with loose movement; recurrent dislocations at the scapulohumeral joint; flail shoulder; or ankylosis of the scapulohumeral joint.
 
3. From February 5, 2010 to March 15, 2010 and from October 1, 2010, the residuals of right shoulder acromioclavicular separation have not been manifested by limitation of arm motion to 25 degrees from side; fibrous union, or nonunion of the humerus; flail shoulder; or ankylosis of the scapulohumeral joint.

CONCLUSION OF LAW

1. The criteria for an evaluation in excess of 10 percent from April 1, 2009 to February 4, 2010, for the residuals of right shoulder acromioclavicular separation have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.7, 4.71a, Diagnostic Codes 5200-5203 (2015).
 
2. With resolution of reasonable doubt in the Veteran's favor, the criteria for an evaluation of 20 percent, but no higher, from February 5, 2010 to March 15, 2010 and from October 1, 2010, for the residuals of right shoulder acromioclavicular separation have been met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.7, 4.71a, Diagnostic Codes 5200-5203.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Preliminary Matters

Pursuant to the Board's November 2014 Remand, the Appeals Management Center (AMC) obtained outstanding VA treatment records, scheduled the Veteran for a VA examination to determine the severity of his service-connected right shoulder disability, readjudicated the Veteran's claim, and issued a Supplemental Statement of the Case. Based on the foregoing actions, the Board finds that there has been compliance with the Board's November 2014 Remand. Stegall v. West, 11 Vet. App. 268 (1998).

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs (VA) has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. There is no issue as to providing an appropriate application form or completeness of the application. VA notified the Veteran in June 2009, of the information and evidence needed to substantiate and complete a claim, to include notice of what part of that evidence is to be provided by the claimant, what part VA will attempt to obtain, and how disability ratings and effective dates are determined. 

VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. There is no evidence that additional records have yet to be requested, or that additional examinations are in order. 

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

When, as here, the Veteran is requesting a higher rating for an already established service-connected disability, the present disability level is the primary concern and past medical reports do not take precedence over current findings. See Francisco v. Brown, 7 Vet. App. 55 (1994). However, "staged" ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran filed his claim for increased rating for his right shoulder disability in June 2009. Temporary total ratings pursuant to 38 C.F.R. 4.30 based on surgery necessitating requiring at least one month of convalescence for a service-connected disability have been assigned from December 16, 2008 to March 31, 2009 and from March 16, 2010 to September 30, 2010. Thus, the periods under appeal include April 1, 2009 to March 15, 2010 and from October 1, 2010. 

The Board also notes that an April 2013 rating decision granted service connection for right ulnar neuropathy at the elbow as secondary to service-connected residuals of right shoulder acromioclavicular separation and assigned a 10 percent evaluation effective from February 14, 2012. As the Veteran did not appeal the rating assigned to the right ulnar neuropathy, the Board will restrict its analysis to the orthopedic manifestations of the service-connected right shoulder disability.

Disabilities of the shoulder and arm are rated under 38 C.F.R. § 4.71a, Diagnostic Codes 5200 through 5203 (2015). A distinction is made between major (dominant) and minor (nondominant) musculoskeletal groups for rating purposes. 

In the instant case, the Veteran's right shoulder is considered the minor (nondominant) upper extremity. Although the Veteran contends that he is ambidextrous so that his right hand should be considered his major upper extremity under the provisions of 38 C.F.R. § 4.69, the evidence of record indicates that he is actually left handed. In this regard, it is noted that the Veteran reported that his left was his dominant hand on examinations for entry into active duty in 1993 and for separation in 1997. On VA examination in June 1997, the Veteran again reported that he was left handed. On VA examination in February 2013, the Veteran reported that he does about 50 percent with both hands but noted that he writes, eats, and shoots a gun with his left hand, draws a bow with his right hand, and can run equipment/saw with either the right or left hand. These admissions by the Veteran are found to be most persuasive; as such the Board finds that the Veteran's right hand is his minor upper extremity.

Diagnostic Code 5200 rates favorable ankylosis of the scapulohumeral joint with abduction to 60 degrees, reaching the mouth and head, as 20 percent disabling for the minor arm. Intermediate ankylosis, between favorable and unfavorable, warrants a 30 percent rating for the minor arm. Unfavorable ankylosis with abduction limited to 25 degrees is assigned a 40 percent rating for the minor arm. 

Under Diagnostic Code 5201, limitation of motion of the shoulder to shoulder level or midway between the side and shoulder level warrants a 20 percent evaluation for the minor arm. Finally, motion no more than 25 degrees from the side warrants a 30 percent rating for the minor arm. 

Normal (full) range of motion of the shoulder is forward elevation (flexion) to 180 degrees; abduction to 180 degrees, external rotation to 90 degrees and internal rotation to 90 degrees. 38 C.F.R. § 4.71, Plate I. 

Under Diagnostic Code 5202, for impairment of the humerus in the minor arm, a 20 percent rating is granted when there is malunion with either moderate or marked deformity. Also under Diagnostic Code 5202, for recurrent dislocations at the scapulohumeral joint with infrequent episodes and guarding of movement at shoulder level or when there are frequent episodes and guarding of all arm movements a 20 percent rating is granted. Fibrous union warrants a 40 percent rating. Nonunion (false flail joint) warrants a 50 percent rating. Loss of head (flail shoulder) warrants a 70 percent rating. 

Under Diagnostic Code 5203 for impairment of the clavicle or scapula, a 10 percent evaluation is assigned in cases of malunion or nonunion without loose movement. A 20 percent evaluation contemplates dislocation or nonunion with loose movement. Alternatively, the disability may be rated on impairment of function of a contiguous joint. 

The provisions of 38 C.F.R. §§ 4.45 and 4.59 also contemplate inquiry into whether there is limitation of motion, weakness, excess fatigability, incoordination, and impaired ability to execute skilled movements smoothly, and pain on movement, swelling, deformity, or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing, and weight-bearing are also related considerations. The Court has held that diagnostic codes predicated on limitation of motion require consideration of a higher rating based on functional loss due to pain on use or due to flare-ups. 38 C.F.R. §§ 4.40, 4.45, 4.59; Johnson v. Brown, 9 Vet. App. 7 (1997); and DeLuca v. Brown, 8 Vet. App. 202, 206 (1995).

In June 2009, the Veteran presented to the emergency room with report that he fell about three feet and caught himself with his right elbow on the deck suddenly abducting his right shoulder and felt a "pop" with severe pain. Physical examination demonstrated a well-healed surgical scar on the anterior shoulder. There was some down sloping of the right shoulder as compared to left. No bruising or soft tissue swelling was noted. There was diffuse tenderness with palpation of shoulder. There was limited range of right shoulder motion, so he would not attempt to abduct or forward flex. He was only able to offer internal rotation to 90 degrees and extension to approximately 40 degrees. Passively, he was able to flexion to about 50 degrees before pain limited the process. External rotation was tolerated to 15 degrees and abduction tolerated to 50 degrees. The predominate area of discomfort limiting range of motion was to the medial aspect of the shoulder about the subacromial area. The Veteran's had good strength of internal rotation but he was weak in external rotation and during an attempt at lift-off from the abdomen. The provider noted that his strength was rated at approximately 2/5 secondary to pain to the right shoulder. X-rays of the right shoulder revealed no fracture or dislocation, and surgical anchor was in place. 

Four days later, active abduction was to 15 degrees, flexion was to 15 degrees, extension was to 50 degrees, internal rotation was to 90 degrees, and external rotation was to 15 degrees. Passive abduction was to 50 degrees, flexion was to 60 degrees, and external rotation was to approximately 60 degrees. There was no crepitation noted as his arm was moved. He continued to have significant limitations of resistive strength. He was able to perform Codman exercises without significant irritation of the shoulder. MRI of the right shoulder showed partial undersurface tear of the rotator cuff tendon just proximal to its insertion in the greater tuberosity and status post previous rotator cuff repair with chronic supraspinatus tendinitis.

On examination in July 2009, the Veteran's initial glenohumeral motion was noted to be quite comfortable but then painful. Glenohumeral abduction was to be limited to 80 degrees, internal rotation was limited to 45 degrees, and external rotation was limited to 65 degrees. Adduction appeared to be about normal. The provider noted that the Veteran appeared to be developing adhesive capsulitis following his injury in June 2009. An interarticular injection was administered, and the immediate affect was good, and his level of comfort was improved. 

In August 2009, the Veteran appeared to have a resolution of the process of adhesive capsulitis, and had advanced well with regard to stretching and engaging, with gradual introduction of weight resistance. On examination, the Veteran's had full range of motion throughout the shoulder and his strength was intact. He was a bit tender to supraspinatus testing, but the examiner noted that he could appreciate his strength at 5-/5. All other areas showed no remarkable findings about the shoulder.

In August 2009, the Veteran underwent VA examination of the right shoulder at which time he reported pain, stiffness, heat, instability, locking, lack of endurance, weakness, giving way, and fatigability. The Veteran described flare-ups anytime he used or moved his right shoulder and estimated that the extent of impairment on daily activities was 20 percent. The examiner noted that flexion and abduction were to 180 degrees and external and internal rotation were to 90 degrees (even after repetitive motion) with pain, fatigue, weakness, and lack of endurance. No instability of the shoulder was noted. The examiner noted no limitation of motion after repetitive use, just pain. X-ray of the right shoulder showed AC joint degenerative changes and evidence of prior surgical repair. There was a scar of the anterior right shoulder measuring 4.5 centimeters in length and 0.5 centimeters wide. There was no tenderness of the scar on examination, no adherence to underlying tissue, no loss of covering of skin over the scar, no elevation or depression of the surface contour of the scar on palpation, and no inflammation, edema, or keloid formation. The examiner noted that the scar was superficial, of normal color, and did not limit motion or function. 

In October 2009, the Veteran presented to the emergency room with complaint of right shoulder pain flare-up. He went to put a pencil behind his ear when he developed a sharp 8/10 pain that lasted for a few minutes. He reported that his right shoulder ached more over the prior three to four days with the poor weather. In December 2009, the Veteran presented to the emergency room with complaint of right shoulder pain, 8/10, and limited motion due to pain. The Veteran left prior to medical screening. 

The Veteran was seen on February 5, 2010 at which time he reported that he worked as a carpenter but was essentially constrained to utilizing the right hand only below shoulder height. The Veteran reported episodes of sharp pain which sometimes occurred at rest and sometimes when using his right shoulder. He was also troubled by awakening at night. The Veteran reported that the pain was not localized and he described it as being over the entire shoulder region. He also described a popping or catching if the arm was brought up and back down again. On examination, he showed a wall-climbing exercise where he brought his shoulder only to just a fingerbreadth or two above shoulder height. He was able to get his shirt off overhead satisfactorily largely using the left hand. There was no asymmetry to the shoulders. Scapular and thoracic motion appeared to be normal. His passive shoulder motion was good except that he resisted internal rotation with the arm in abduction to only neutral position. The Veteran could reach to L2 actively. His power was satisfactory and equal in all positions tested although the testing was associated with pain in any direction. He was not tested with the arm elevated. Supination against resistance was also painful. Arm elevation in pronation and supination showed increased symptoms in pronation. Impression was persistent right shoulder pain status post rotator cuff repair, possible biceps tendonitis. The Veteran was scheduled for arthroscopic reevaluation. On March 16, 2010, arthroscopy with debridement and mini open biceps tenodesis was performed.

In November 2010, the Veteran reported radiating pain at 4-5/10 which "comes and goes." Physical examination demonstrated full range of motion and motor strength of bilateral upper extremities with sensation intact. 

In April 2012, the Veteran reported that ten days prior he was reaching back and raising his arm when it "popped." The Veteran rated the pain in his right bicep as 4/10. Physical examination demonstrated some pain with elevation of the arm. Power was good in all position, and there was no sign of biceps irritation. 

The Veteran underwent VA examination in June 2012 at which time he demonstrated right shoulder flexion and abduction to 170 degrees with pain at the endpoint. There was no additional limitation in range of motion of the shoulder following repetitive-use testing. The examiner noted only functional loss and/or functional impairment and localized tenderness or pain on palpation of the left shoulder but not the right shoulder. Muscle strength testing was normal. There was no ankyloses, history of mechanical symptoms, recurrent dislocation, subluxation, or evidence of an AC joint condition or other impairment of the clavicle or scapula. The examiner noted that Hawkins' Impingement Test, Empty-can Test, External Rotation/Infraspinatus Strength Test, Lift-off Subscapularis Test, and Cross-body adduction test were positive for the left shoulder but not the right shoulder. The examiner noted that the Veteran had post-operative pain and multiple injuries of the right shoulder since surgery. The Veteran's scar was not painful, unstable, or the total of 39 square centimeters. 

The Veteran underwent VA examination in February 2013 at which time he noted that his pain was worse with cold weather or change in barometer and with lots of lifting. Physical examination demonstrated right shoulder flexion to 180 degrees with pain at 170 degrees and abduction to 170 degrees with pain at 150 degrees. After repetitive testing, flexion was to 180 degrees and abduction was to 170 degrees. The examiner noted that there was no additional limitation in range of motion of the right shoulder following repetitive use testing but he did have functional loss and/or functional impairment of less movement than normal, excess fatigability, incoordination, and atrophy of disuse on the right. Muscle strength testing was normal in flexion and abduction. There was no ankyloses. Hawkins' Impingement Test and Empty-can Test were positive. There was no history of mechanical symptoms, recurrent dislocation, or subluxation of the glenohumeral joint. The examiner noted that there was dislocation (acromioclavicular separation or sternoclavicular dislocation). There was no tenderness on palpation of the AC joint. The examiner noted that the Veteran had no scars which were painful, unstable, or the total area greater than 39 square centimeters. The examiner also noted that Phalen's test was positive and that anterior scar over the fight shoulder had two scars over the top of each one - one was 4.5 centimeters and other was 5.5 centimeters long which were well-headed and not painful. Crepitus was noted in the right shoulder. The examiner noted that the Veteran's shoulder condition. The examiner noted that the Veteran's shoulder condition impacts his ability to work with a decrease in his ability to lift weight above his head, a decrease in fine motor skills, and an increase in fatigue. The examiner noted that the Veteran was not able to do jobs as quickly as before, that he no longer could do framing as beams were too heavy for him to lift, and that he did smaller jobs that did not require as much lifting. 

The Veteran underwent VA examination in January 2015 at which time he reported that his shoulder was still sore all the time, that it tired quickly, and that it slowed him down. He also reported that he had a difficult time sleeping at night due to his right shoulder pain and had to reposition quite a bit to make himself comfortable. The Veteran reported that he did not take any medication for his right shoulder condition because he did not like to take medications. The Veteran reported that when he tried to raise his right arm above his head, the pain flared up more which impacted his work as a carpenter. Physical examination demonstrated flexion to 160 degrees, abduction to 110 degrees, external rotation to 90 degrees and internal rotation to 90 degrees; pain was exhibited on flexion and abduction. The Veteran reported that he could not abduct his right shoulder much due to pain. After repetitive use, there was no significant limit of functional ability with repeated use due to pain, weakness, fatigability, or incoordination. The shoulder was not examined during a flare-up, but the Veteran reported that his shoulder hurt all the time and that every time he had to lift up something over his head, it made his shoulder flare-up and that cold whether made it hurt more. The examiner noted that disturbance of locomotion was an additional contributing factor of disability and noted that the Veteran avoided lifting his right arm too high due to severe pain. Muscle strength on flexion and abduction was 4/5. There was no muscle atrophy, ankylosis, instability, dislocation, or labral pathology expected. There was no clavicle, scapula, acromioclavicular joint or sternoclavicular joint condition. There was no loss of head; and no nonunion, fibrous union, or malunion of the humerus. The Veteran had a scar of the right shoulder 6 centimeters in length and 0.5 centimeters wide and three small arthroscopic surgical scars each measuring 0.7 centimeters in size. There was no pain on palpation, and the scars appeared well healed and stable. 

Initially, the Board notes that the limitation of motion shown in June and July 2009, which resulted from an intercurrent injury, was not reflective of an identifiable increase the severity of the service-connected right shoulder disability. By August 2009, his symptoms had considerably resolved, and he demonstrated full range of motion throughout the shoulder. 

In February 2010, the Veteran was only able to bring his shoulder only to just a fingerbreadth or two above shoulder height. In November 2010, he again demonstrated full range of motion and motor strength. In June 2012, the Veteran demonstrated flexion and abduction to 170 degrees with pain at the endpoint. In February 2013, the Veteran demonstrated right shoulder flexion to 180 degrees with pain at 170 degrees and abduction to 170 degrees with pain at 150 degrees. In January 2015, the Veteran demonstrated flexion to 160 degrees and abduction to 110 degrees.

At its worst, in February 2010, the Veteran's service-connected right shoulder disability was limited to about shoulder level. The Board notes that after surgery in March 2010, the Veteran consistently demonstrated full or nearly full flexion and abduction. Despite nearly normal range of motion, the February 2013 VA examiner found functional impairment with less movement than normal, excess fatigability, incoordination, atrophy of disuse in the right shoulder as well as acromioclavicular separation or sternoclavicular dislocation. Thus, although the medical evidence after the Veteran's March 2010 surgery does not demonstrate motion limited to shoulder level, it is clear the right shoulder condition has resulted in pain and fatigue which frequently interfered with his occupation. Thus, the entirety of the medical evidence showed a level of pain and functional loss that interfered with his activities of a far greater extent than reflected by a 10 percent rating beginning February 5, 2010. 

Thus, resolving all doubt in his favor, a 20 percent rating, but no higher, is warranted from February 5, 2010. 

Prior to February 5, 2010, however, the Board finds that an evaluation higher than 10 percent is not warranted as the evidence does not demonstrate impairment of the humerus, clavicle or scapula; limitation of arm motion at shoulder level or below, or ankylosis.

The Board also finds that an evaluation higher than 20 percent is not warranted as the evidence does not demonstrate impairment of the humerus, limitation of arm motion to 25 degrees from side, or ankylosis. 

The Board accepts that the Veteran is competent to report on his functional impairment related to his right shoulder disability, including his assertions of continued pain. Laypersons are without a doubt competent to report symptoms and events that they experience through their senses. See 38 C.F.R. § 3.159(a)(2); Charles v. Principi, 16 Vet. App 370, 374 (2002). Furthermore, the Board finds the Veteran's own reports of symptomatology to be credible. However, here, the Board finds that the medical findings on examination, which have taken into consideration the Veteran's lay statements as to his symptomatology, do not more nearly reflect the criteria for the next higher evaluation. Thus, the Board finds that the more probative evidence consists of that prepared by neutral, skilled professionals, and such evidence demonstrates that the currently assigned evaluations are appropriate for the Veteran's disability.
 
The Board has considered whether a higher disability evaluation is available under any other potentially applicable provision of the rating schedule. However, a higher evaluation is not warranted based on any other provision of the rating schedule. 38 C.F.R. § 4.71a, Diagnostic Codes 5200-5203.

The Board has considered whether a separate evaluation for residual surgical scars is warranted. In this case, as the medical evidence indicates that the scars were not painful, unstable, deep, or covering a total area of at least 929 square centimeters, the Board finds that a separate evaluation is not warranted pursuant to the rating criteria at 38 C.F.R. § 4.118 for scars.

 Additional Considerations

The discussion above reflects that the symptoms of the Veteran's right shoulder disability are contemplated by the applicable rating criteria. The effects of his disability, including pain, excess fatigability, weakness, incoordination, and atrophy of disuse have been fully considered and are contemplated in the rating schedule. Specifically, the rating criteria contemplate the Veteran's painful, limited motion of the right shoulder and the other symptoms were further considered in accordance with the provisions of 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015), and the holding in DeLuca, 8 Vet. App. at 202. Thus, consideration of whether his disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extra-schedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).

Finally, under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. In this case, however, even after applying the doctrine of reasonable doubt, there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

The Board acknowledges the judicial holding in Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In that decision, the United States Court of Appeals for Veterans Claims held that a request for a total rating based on individual unemployability (TDIU), whether expressly raised by the Veteran or reasonably raised by the record, is not a separate 'claim' for benefits, but rather, can be part of a claim for increased compensation. In other words, if the claimant or the evidence of record reasonably raises the question of whether the Veteran is unemployable due to a disability for which an increased rating is sought, then part and parcel with the increased rating claim is the issue whether a TDIU is warranted as a result of that disability. In the present case, there is no indication in the record that reasonably raised a claim of entitlement to a TDIU. At the January 2015 VA examination, the Veteran reported that he was self-employed and worked as a carpenter.

 
ORDER

Entitlement to an evaluation in excess of 10 percent for residuals of right shoulder acromioclavicular from April 1, 2009 to February 4, 2010, is denied.

Entitlement to an evaluation of 20 percent, but no higher, for residuals of right shoulder acromioclavicular from February 5, 2010 to March 15, 2010 and from October 1, 2010, is granted, subject to the law and regulations governing the payment of monetary benefits.

____________________________________________
MICHAEL D. LYON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs