Citation Nr: 1546195 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 10-16 634 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to a compensable rating for bilateral lattice degeneration and pseudopapilledema.

2. Entitlement to a temporary total rating for treatment of a service-connected condition requiring convalescence (brain tumor).

3. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) prior to August 6, 2008.


REPRESENTATION

Appellant represented by: Karl Kazmierczak, Attorney


WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

Matthew Schlickenmaier, Associate Counsel


INTRODUCTION

The Veteran had active duty service from February 1977 to September 2000.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA).

The Veteran testified before the undersigned in Washington, D.C. in November 2011.

In March 2012, the Board remanded for further development the issues currently on appeal, as well as the issues of entitlement to service connection for headaches and entitlement to service connection for a disorder manifested by short-term memory loss. The latter two issues were granted in a July 2015 rating decision. Those issues are no longer before the Board. The July 2015 rating decision also awarded entitlement to a TDIU from August 6, 2008.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into account the existence of these electronic records.


FINDINGS OF FACT

1. During the period on appeal, the Veteran's service-connected bilateral lattice degeneration with pseudopapilledema has not resulted in an irregular, duplicated, enlarged, or diminished image; or, visual impairment.

2. Prior to August 6, 2008, basic entitlement to a temporary total evaluation under 38 C.F.R. § 4.30 was not established.

3. Prior to August 6, 2008, the Veteran's service-connected disabilities were not so severe as to prevent him from engaging in substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for a compensable rating for bilateral lattice degeneration with pseudopapilledema have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.14 (2015); 38 C.F.R. § 4.79, Diagnostic Code 6011 (prior to December 10, 2008).

2. The criteria for a temporary total disability evaluation for a brain tumor or residuals thereof based on surgical treatment and other treatment necessitating convalescence under the provisions of 38 C.F.R. § 4.30 have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.150, 3.155, 3.400, 4.30 (2015).

3. The criteria for entitlement to a TDIU prior to August 6, 2008, have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 3.340, 3.341, 4.16, 4.18, 4.19 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. There is no issue as to providing an appropriate application form or completeness of the application. In August 2008, VA notified the Veteran of the information and evidence needed to substantiate his claim, to include notice of what part of that evidence is to be provided by the claimant, and notice of what part VA will attempt to obtain.

VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. There is no evidence that additional records have yet to be requested, or that additional examinations are in order.

The Veteran's statements in support of the claim are of record, including testimony provided at a hearing before the undersigned Veterans Law Judge. The Board hearing focused on the elements necessary to substantiate his claims and the Veteran, through his testimony and his representative's statements, demonstrated actual knowledge of the elements necessary to substantiate the claims. As such, the Board finds that the undersigned Veterans Law Judge complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) (2015).

Pursuant to the Board's March 2012 remand, the AOJ obtained an adequate VA examination addressing the severity of the Veteran's bilateral lattice degeneration with pseudopapilledema, readjudicated the claims, and issued a supplemental statement of the case. Based on the foregoing actions, the Board finds that there has been substantial compliance with the prior remand. Stegall v. West, 11 Vet. App. 268 (1998).

Temporary Total Evaluation

The Veteran has requested a temporary total evaluation based on surgical treatment for a brain tumor conducted in November 2007. In a July 2008 correspondence, the Veteran reported that the operation took place on November 12, 2007 and that he had been hospitalized until November 22, 2007 at Pitt County Memorial Hospital. Thereafter, he had been placed on convalescent leave from November 22, 2007 to January 2, 2008. Private treatment records confirm that on November 12, 2007, the appellant underwent a left frontotemporal craniotomy with excision of meningioma.

Temporary total ratings will be assigned from the date of hospital admission and continue for one, two, or three months from the first day of the month following hospital discharge when treatment of a service-connected disability results in: (1) Surgery necessitating at least one month of convalescence; (2) Surgery with severe postoperative residuals such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, or the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited); or (3) Immobilization by cast, without surgery, of one major joint or more. 
38 C.F.R. § 4.30(a). Pursuant to 38 C.F.R. § 4.30, the disability requiring hospitalization or convalescence must be service connected.

The effective date of an evaluation and award for pension, compensation, or dependency and indemnity compensation based on an original claim, a claim reopened after a final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 
38 U.S.C.A. § 5110(a) (West 2014); 38 C.F.R. § 3.400 (2015). In new service connection cases, the effective date is the date of receipt of claim or the date entitlement arose, whichever is later.

The Veteran submitted the initial, formal claim for service connection for a brain tumor on August 6, 2008, along with private medical records identifying surgical treatment for excision of the brain tumor on November 12, 2007. The present claim for a temporary total evaluation was also identified in the August 6, 2008 claim. There are no written documents or communications of record prior to August 6, 2008 that constitute a formal, informal, or implicit claim for service connection for a brain tumor and/or the residuals thereof. See 38 C.F.R. § 3.155. For these reasons, the Board finds that the effective date for service connection for a brain tumor would be the date of receipt of the August 6, 2008 claim. See 38 C.F.R. § 3.400(b)(2).

Accordingly, in a May 2012 rating decision implementing the Board's March 2012 grant of entitlement to service connection for a brain tumor, the RO assigned an effective date of August 6, 2008. The Veteran did not appeal.

Hence, service connection for a brain tumor was not established at the time of the November 12, 2007 surgery or during any period of convalescence prior to August 6, 2008. Accordingly, prior to August 6, 2008 basic entitlement to a temporary total evaluation under 38 C.F.R. § 4.30 is not established. For these reasons, prior to August 6, 2008, the appeal for entitlement to a temporary total disability evaluation for a brain tumor under 38 C.F.R. § 4.30 must be denied as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426 (1994) (where law is dispositive, not evidence, the appeal should be terminated for lack of legal merit or entitlement).

Bilateral Lattice Degeneration and Pseudopapilledema

The Veteran also claims entitlement to an increased rating for bilateral lattice degeneration with pseudopapilledema. For reasons discussed below, the Board finds that an increased rating is not warranted.

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

The Veteran has recently been awarded entitlement to service connection for other disorders involving eyes/vision besides bilateral lattice degeneration with pseudopapilledema. The RO has at times characterized these disorders as intermingled with the claim currently on appeal. For clarity, a brief discussion follows.

The current increased rating claim arises from an August 2008 correspondence wherein the Veteran also claimed entitlement to service connection for a brain tumor. The appellant reported that the brain tumor and subsequent surgery to remove it caused damage to both optic nerves which resulted in impaired visual acuity and lost peripheral vision.

When he filed the claim, a noncompensable evaluation for bilateral lattice degeneration with pseudopapilledema had been in effect since October 2000 and was rated under Diagnostic Codes 6099-6011. Diagnostic Code 6011 is applicable to retinal scars, atrophy or irregularities. See 38 C.F.R. § 4.79. The use of the "99" series and a hyphenated diagnostic code reflects that there is no specific diagnostic code applicable to pseudopapilledema, and it must be rated by analogy. 38 C.F.R. § 4.20.

Hence, in August 2008, the Veteran filed an increased rating claim for bilateral lattice degeneration with pseudopapilledema as well as a claim of entitlement to service connection for a brain tumor with residuals including visual impairment. In January 2009, the RO denied both claims. The Veteran appealed.

In March 2012, the Board granted entitlement to service connection for a brain tumor and residuals thereof and entitlement to service connection for loss of vision secondary to a brain tumor. The Board also remanded the issue of entitlement to an increased rating for bilateral lattice degeneration with pseudopapilledema for an examination. Among other things, the Board directed the examiner to differentiate the symptomatology associated with the service-connected bilateral lattice degeneration with pseudopapilledema from that associated with the residuals of the brain tumor.

The May 2012 rating decision implementing the Board decision reflects that the RO initially evaluated the brain tumor as 60 percent disabling under Diagnostic Code 8003, the minimum rating for a benign growth of the brain. See 38 C.F.R. § 4.124a (2015). However, after a November 2014 VA examiner determined that the appellant's visual impairment was related to residuals of the brain tumor, a July 2015 rating decision granted entitlement to service connection for bilateral visual field defects due to tubercular sella meningioma and decreased visual acuity of the left eye due to residuals of tubercular sella meningioma. The RO assigned a 30 percent evaluation to the former, effective August 6, 2008, under Diagnostic Code 6080 applicable to visual field defects. See 38 C.F.R. § 4.79. Additionally, decreased visual acuity of the left eye was assigned a 10 percent evaluation effective August 6, 2008 under Diagnostic Codes 6011-6066. Diagnostic Code 6066 is applicable to impaired visual acuity in one eye. A supplemental statement of the case issued the same day as the rating decision explains that the RO consolidated the issues of bilateral lattice degeneration with pseudopapilledema and decreased visual acuity of the left eye. The supplemental statement of the case noted, however, that while bilateral lattice degeneration with pseudopapilledema still warranted a noncompensable rating, left eye decreased visual acuity warranted a 10 percent rating.

In sum, the Veteran is currently in receipt of three separate evaluations relating to vision/eyes: visual field defects (Diagnostic Code 6080), decreased visual acuity of the left eye (Diagnostic Code 6066) and bilateral lattice degeneration with pseudopapilledema (rated by analogy to Diagnostic Code 6011). However, despite the RO's characterization of the issues in the supplemental statement of the case, only the issue of entitlement to an increased rating for bilateral lattice degeneration with pseudopapilledema is currently on appeal. As observed in the supplemental statement of the case, that disability is currently evaluated as noncompensable under
Diagnostic Code 6011.

Diagnostic Code 6011 provides for a 10 percent disability rating for localized scars, atrophy, or irregularities of the retina, unilateral or bilateral, that are centrally located and that result in an irregular, duplicated, enlarged, or diminished image. Diagnostic Code 6011 also provides for an alternate evaluation to be made based on visual impairment due to retinal scars, atrophy, or irregularities, if this would result in a higher evaluation. See 38 C.F.R. § 4.79.

The Board notes that VA amended the regulations relevant to rating disabilities of the eye during the course of this appeal. See 73 Fed. Reg. 66,543 (November 10, 2008). This amendment is effective December 10, 2008 and applies to all applications for benefits received by VA on or after that date. As the Veteran's increased rating claim was received prior to December 10, 2008, the amendment does not apply in this case. At any rate, Diagnostic Code 6011 was essentially unaffected by the amendment.

At a December 2008 VA examination, a VA ophthalmologist diagnosed the appellant with lattice degeneration but noted that it was a benign, incidental finding and observed that the Veteran had no papilledema/pseudopapilledema at the time of the examination because it had resolved. The examiner further opined that the Veteran's severe left eye visual acuity loss, visual field loss with macular splitting of the left eye which accounted for the drop in visual acuity in the left eye, and the disorder of the optic chiasm associated with neoplasm, were all secondary to the Veteran's brain tumor and its treatment. Although the ophthalmologist examined the Veteran, he did not review the claims file.

In a February 2009 letter, Dr. Carroll, the chief of ophthalmology at Womack Army Medical Center, took issue with the December 2008 examiner's characterization of the appellant's pseudopapilledema, stating that it "does not heal [but] is observed or in cases of a brain tumor, the papilledema may resolve when the tumor is removed." He added that the appellant's vision loss was directly related to the brain tumor.

In a November 2011 correspondence, the representative argued that because the Veteran was service connected for lattice degeneration with pseudopapilledema and medical evidence did not distinguish between loss of vision due to that disorder as opposed to some other cause, his loss of vision should be rated under lattice degeneration with pseudopapilledema. Alternatively, the representative argued that the loss of vision was due to his brain tumor, which he claimed should be service connected.

In November 2014, after reviewing the claims file and examining the Veteran, a VA optometrist diagnosed the appellant with: (1) bilateral lattice degeneration; (2) residual reduced visual acuity of the left eye secondary to meningioma resection; and (3) bilateral field defects secondary to hemangioma resection. The examiner opined that while the bilateral lattice degeneration had "no bearing on the Veteran's current complaints," the resection of his meningioma in 2007 most likely resulted in the visual field cuts noted on examination. Further, while the appellant no longer had pseudopapilledema, his optic atrophy was secondary to frank papilledema which was secondary to optic nerve impingement by the meningioma prior to resection.

In light of the above, a compensable rating for bilateral lattice degeneration with pseudopapilledema is not warranted. Both VA examiners found that the disabilities were essentially asymptomatic or had resolved. While Dr. Carroll took issue with the December 2008 VA examiner's description of how pseudopapilledema can change, he did not dispute that symptoms of pseudopapilledema had abated. Indeed, he agreed that the appellant's vision loss was directly related to the brain tumor. While the December 2008 VA examiner failed to review the claims file, his experience as an ophthalmologist still affords his opinion significant weight given that, here, the current severity of the disability is of primary importance. Although the November 2014 examiner stated that optic atrophy was secondary to frank papilledema, he found that frank papilledema was secondary to the brain tumor; thus, he ultimately concluded that optic atrophy was the result of the brain tumor. In any case, the appellant is not service connected for "frank papilledema," but pseudopapilledema.

In sum, during the period on appeal, the competent and credible medical evidence shows that the appellant's bilateral lattice degeneration with pseudopapilledema has not resulted in any symptomatology warranting an increased rating that does not overlap with service-connected residuals of a brain tumor. The Board is prohibited from evaluating the same disability under several diagnostic codes. See 38 C.F.R. § 4.14. Hence, while Diagnostic Code 6011 provides for an evaluation based on visual impairment, here, those provisions are inapplicable. See 38 C.F.R. § 4.79. Indeed, the representative conceded as much in the November 2011 correspondence when he argued that visual impairment should be rated either in connection with lattice degeneration with pseudopapilledema or as secondary to his brain tumor. The Board agrees. Thus, as the appellant's visual impairment has been evaluated as secondary to residuals of the brain tumor, the claim is denied.

The discussion above reflects that the symptoms of the Veteran's bilateral lattice degeneration and pseudopapilledema are contemplated by the applicable rating criteria. The effects of his disability have been fully considered and are contemplated in the rating schedule. Thus, consideration of whether his disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extra-schedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008). Finally, under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. In this case, however, even after applying the doctrine of reasonable doubt, there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

Entitlement to a TDIU Prior to August 6, 2008

For VA purposes, total disability exists when there is any impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. Total disability ratings for compensation may be assigned, where the schedular rating is less than total, if a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(a). This regulation provides that consideration of such a rating is warranted if a veteran has one service-connected disability rated 60 percent or more or, if there are two or more such disabilities, there must be at least one that is rated 40 percent or more, with the remaining disabilities combining to 70 percent or more. Id.

In this case, as noted above, the July 2015 rating awarded entitlement to a TDIU effective August 6, 2008. Prior to that date, excluding temporary total evaluations, the Veteran's combined evaluation was at most 60 percent only from August 1, 2007. During this period, the 60 percent rating was made up of a 40 percent evaluation for diabetes mellitus, a 10 percent evaluation for a left hand dupuytren's contracture, a 10 percent evaluation for tinnitus and a 10 percent evaluation for a left knee disorder. These disabilities were not all incurred in action or as a prisoner of war, did not all result from a single accident or common etiology or affect a single body system, and did not all affect the extremities. Hence, the combined 60 percent rating cannot be considered a single disability and for the period prior to August 6, 2008, the Veteran does not meet the schedular requirements for a TDIU. 38 C.F.R. § 4.16(a).

The Board should submit to the Director of Compensation for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a). See 38 C.F.R. § 4.16(b).

In a September 2008 application for individual unemployability, the Veteran claimed that from July 2003 to June 30, 2008 (except for some time lost from November 2007 to January 2008 due to the brain tumor as described above), he had worked about 50 hours per week as a program manager for the Cumberland County Schools until he became too disabled to work. Specifically, he claimed that his service-connected diabetes mellitus, bilateral dupuytren's contracture of the hands with residual scarring and bilateral lattice degeneration with pseudopapilledema prevented employment.

At a December 2008 VA examination, the Veteran denied any episodes requiring hospitalization due to his diabetes in the past year and the examiner found that although he was currently unemployed, the diabetes would have no significant effects on his occupation. Regarding bilateral dupuytren's contracture, while the examiner noted that there were "significant effects" on his usual occupation, he specified that these effects were due to limited typing speed. Finally, as described above, bilateral lattice degeneration with pseudopapilledema has been essentially asymptomatic during the period on appeal and while visual impairment has interfered with his ability to work, entitlement to service connection for residuals of a brain tumor was not in effect prior to August 6, 2008. While limited typing speed likely had some negative effect on the Veteran's employability, there is no indication that it was so severe as to prevent him from engaging in substantially gainful employment. In light of the above, the Board finds that entitlement to a TDIU prior to August 6, 2008 is not warranted.

As a preponderance of the evidence is against the claims of entitlement to a compensable rating for bilateral lattice degeneration with pseudopapilledema and entitlement to a TDIU prior to August 6, 2008, the doctrine of reasonable doubt is not for application. 38 U.S.C.A. § 5107(b).


ORDER

Entitlement to a compensable rating for bilateral lattice degeneration with pseudopapilledema is denied.

Entitlement to a temporary total rating for treatment of a service-connected condition requiring convalescence (brain tumor) is denied.

Entitlement to a TDIU prior to August 6, 2008 is denied.


____________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs