Citation Nr: 1702635 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 10-45 118 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to increases in the (0 percent prior to September 8, 2016 and 30 percent that date) ratings assigned for sinusitis. 

2. Entitlement to a compensable rating for hypertension with erectile dysfunction (ED). 


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

Debbie A. Breitbeil, Counsel



INTRODUCTION

The appellant is a Veteran who served on active duty from February 1958 to February 1978. This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California, which granted service connection for sinusitis, rated 0 percent, and for hypertension with ED, rated 0 percent, along with special monthly compensation (SMC) for loss of use of a creative organ (all awards effective in August 2008). In February 2011, a hearing was held before a Decision Review Office (DRO) at the RO; a transcript of the hearing is in the record. 

In November 2014, the Board remanded the case to the RO for additional development of the sinusitis and hypertension claims. A July 2015 Board decision denied a compensable rating for sinusitis and remanded to the RO for additional development the issue seeking a compensable rating for hypertension with ED. The Veteran appealed the Board's decision as to the sinusitis claim to the United States Court of Appeals for Veterans Claims (Court). In June 2016, the parties - the Veteran and the legal representative of the VA, the Office of the General Counsel - filed a Joint Motion for Partial Remand to vacate the Board's decision to the extent that it denied a compensable rating for sinusitis, and to remand the case to the Board. The Court in June 2016 granted the Joint Motion. Meanwhile, in June 2016 the Board again remanded to the RO for further development the increased rating for hypertension claim. Then, in August 2016, the Board remanded the case to the RO for additional development of the sinusitis claim. Following such development, an October 2016 rating decision, granted a 30 percent rating for sinusitis, effective September 8, 2016 (the date of a VA examination); the Veteran has continued to pursue his claim for a higher rating for sinusitis. Now, the case, with the sinusitis and hypertension claims merged once again, is back before the Board for appellate consideration. 

One other issue is in appellate status but will not be addressed herein because it has not been certified to the Board for consideration (and is not ripe for appellate review). The issue is service connection for type 2 diabetes mellitus, to include as secondary to service-connected sleep apnea and hypertension, which arose from a June 2015 rating decision that reopened the Veteran's claim and denied it on the merits. Development is still pending, particularly as evidence including a private medical opinion and a transcript of a DRO hearing conducted in October 2016 has been added to the record, and the RO has not considered this evidence or certified the matter to the Board for its appellate review. Thus, the Board will proceed to address only the matters of the ratings for sinusitis and hypertension. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The matter of the ratings for sinusitis is being REMANDED to the AOJ. VA will notify the Veteran is action on his part is required.


FINDING OF FACT

Throughout, the Veteran's hypertension with ED has been manifested by diastolic pressures predominantly less than 100, systolic pressures predominantly less than 160, a requirement of continuous medication for control of high blood pressure, and loss of erectile power without deformity of the penis or any other functional limitation. 


CONCLUSION OF LAW

A compensable rating for hypertension with ED is not warranted. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321(b), 4.7, 4.31, 4.104, 4.115b, Diagnostic Codes (Codes) 7101, 7522 (2016). 




REASONS AND BASES FOR FINDING AND CONCLUSION

VCAA

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim. Where, as here, service connection has been granted and an initial disability rating and effective date have been assigned, statutory notice has been fulfilled. The statement of the case (SOC) in October 2010, combined with subsequent supplemental SOCs (SSOCs) in February 2011, March 2011, October 2011, March 2015, December 2015, and October 2016, properly provided notice on the downstream issue of entitlement to an increased initial rating, and the Veteran has had ample opportunity to respond. 

Relevant to its duty to assist, VA has also made reasonable efforts to identify and obtain relevant records in support of the claim. 38 U.S.C.A. § 5103A(a), (b) and (c). The Veteran was afforded opportunity for a hearing before a Veterans Law Judge, which he declined in favor of a hearing before a DRO at the RO in February 2011. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the DRO who conducts a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the DRO hearing, the DRO indicated that the hearing would focus on the matter of the rating for hypertension with ED, and discussed the elements needed to substantiate the claim that remained lacking. The Veteran was assisted at the hearing by an accredited representative from The American Legion. The representative and the DRO asked questions to ascertain the nature and severity of the disability. The Veteran and his representative have not identified any pertinent evidence that might substantiate the claim and has been overlooked. The hearing focused on the elements necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he has actual knowledge of the elements necessary to substantiate his claim. Neither the representative nor the Veteran has suggested any deficiency in the conduct of the hearing. Therefore, the Board finds that, consistent with Bryant, the DRO complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

The RO has obtained the Veteran's service treatment records and VA treatment records. He has submitted private treatment records and has not identified any other records pertinent to the issue on appeal that remain outstanding. Notably, in June 2016 the Board remanded the case to the RO to obtain information from the Veteran pertaining to his initial evaluation at Paradise Family Health Center and subsequent treatment at Paradise, and his treatment by Dr. I.T. (including after he left Paradise). By June 2016 letter, the RO requested such information from the Veteran, including providing him medical release forms for the VA to obtain records on his behalf, but he did not respond. Instead, following the issuance of an SSOC in October 2016 (which noted that the Veteran had not replied to the letter requesting additional information to support his claim), the Veteran and his representative both submitted separately-signed waiver forms, requesting that the Veteran's case be forwarded "immediately" to the Board for consideration. Given the Veteran's and his representative's expressed wishes, the Board will not wait the remainder of the one year given from the time of the June 2016 request, as provided in the June 2016 remand, to consider his hypertension claim; the remainder of the period afforded for response is deemed waived. 

The Veteran was afforded VA compensation examinations in December 2008, February 2010, and March 2015. The examination reports note the Veteran's medical history and pertinent clinical findings sufficient to evaluate hypertension and ED under governing rating criteria, and are adequate to decide the claim. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). There is nothing in the record suggesting a material change in the hypertension or ED after the March 2015 VA examination so as to warrant a reexamination. 38 C.F.R. § 3.327(a). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met.



Legal Criteria

Disability evaluations are determined by application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings" t. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999). 

The pertinent criteria for evaluating hypertension are found at 38 C.F.R. § 4.104, Code, for hypertensive vascular disease (hypertension and isolated systolic hypertension). The criteria for a compensable (10 percent) rating are diastolic pressure is predominantly is 100 or more, or systolic pressure is predominantly 160 or more, or there is a history of diastolic pressure predominantly 100 or more requiring continuous medication for control. A 20 percent rating is assigned when diastolic pressure is predominantly 110 or more, or systolic pressure is predominantly 200 or more. A 40 percent rating is assigned when diastolic pressure is predominantly 120 or more, and a maximum 60 percent rating is assigned when diastolic pressure is predominantly 130 or more. 
 
ED is compensated by an award of SMC (which the Veteran has received). A compensable schedular rating for ED may be assigned under the criteria for rating deformity of the penis, found at 38 C.F.R. § 4.115b, Code 7522, which provides a maximum 20 percent rating for deformity of the penis with loss of erectile power. 
In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

Factual Background

The Board notes that it has reviewed all of the evidence in the Veteran's record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (VA must review the entire record, but does not have to discuss each piece of evidence.). Hence, the Board will summarize the relevant evidence, as appropriate, and the Board's subsequent analysis will focus specifically on what the evidence shows, or does not show, as to the higher rating claim.

The Veteran's service treatment records (STRs) show that on January 1958 service enlistment examination, his blood pressure reading was 130/76. On re-enlistment examinations, it was 140/82 in November 1961, 130/86 in August 1967, and 128/70 in May 1971. On a February 1973 examination for the warrant officer's program, his blood pressure was 118/88. His January 1978 service separation examination found that his blood pressure reading was 156/104. Re-checks in the days following the examination showed his blood pressure readings were 142/96, 138/94, and 130/80. In a Report of Medical History in January 1978, the Veteran denied having high blood pressure. The STRs are otherwise silent for any complaints, treatment, findings, or diagnosis referable to hypertension. 

In statements dated in August 2008, March 2010, and February 2011, the Veteran's private physician, I.T., M.D., indicated that he has treated the Veteran for hypertension since June 1998, and that "[n]o antihypertensive medication was prescribed for [the Veteran's] condition until I saw him and put him on medications." Dr. I.T. noted that prior to 1998 the Veteran was treated by two other physicians, including Dr. Rexrode, who is no longer in practice. 

On December 2008 VA examination, the Veteran reported that his hypertension has been diagnosed since service. On clinical examination, his blood pressure readings were 134/88, 138/90, and 140/100. It was noted that he was taking prescribed hypertension medication. The diagnosis was essential hypertension, under fair control with current management. The Veteran reported that he began having ED five years earlier and Cialis was prescribed. On physical examination the genitourinary area, including the penis, was normal. The examiner opined that the Veteran's ED was, more likely than not, the result of medication he was taking for treatment of hypertension. He also noted that the Veteran had retired from working for the Navy in 2005 and that ED therefore did not affect his work. 

On February 2010 VA examination, the Veteran reported that essential hypertension was diagnosed in 1978, and that he was initially advised to have a low salt and low fat diet, but no medication was given. He further noted that he was initially started on medication for hypertension in 1986 and that he has been on Lisinopril since 1990 with poor control of blood pressure. On clinical examination, his blood pressure readings were 160/84, 152/82, and 146/80. 

Private treatment records from Dr. I.T. show that the Veteran's blood pressure readings were 147/85 in April 2009, 118/71 in November 2009, and 119/86 in March 2010. In a March 2010 statement, Dr. I.T. indicates that the Veteran's blood pressure was 140/86. In May 2010, his blood pressure readings were 106/70 and 133/78. 

Private treatment records from D.S., M.D., show that the Veteran's blood pressure readings were 124/60 in May 2009, 122/92 in June 2009, 131/80 in July 2009, 134/78 in September 2009, 128/82 in December 2009, and 113/77 in June 2010. 

Private treatment records from San Diego Coastal Endocrinology Group show that the Veteran's blood pressure readings were 120/80 in May 2011, 110/70 in August 2014, and 120/80 in February 2015. 

Other private treatment records, from J.C., M.D., show that the blood pressure readings were 110/80 in December 2015 and 130/90 in June 2016. 
VA outpatient records show that the Veteran's blood pressure was 133/93 in March 2014. 

On March 2015 VA examination, it was noted that the Veteran took continuous medication for hypertension, and that he did not have a history of a diastolic blood pressure elevation to predominantly 100 or more. On clinical examination, his blood pressure readings were 136/72, 134/70, and 132/68. The examiner indicated that the Veteran's hypertension did not impact his ability to work. 

In hearing testimony in February 2011, the Veteran asserted that his blood pressure was going up (he indicated that the last time he had a VA examination, his blood pressure was 156/104, which is not borne out by the February 2010 VA examination report) and he was unable to control it despite taking daily medication. In an October 2015 statement, the Veteran indicated that medication has been prescribed for his hypertension since 1978. He asserted that his claim for an increased rating for hypertension was based on having both systolic and diastolic readings higher than 120/80 and on his need to take medication for control of blood pressure. He asserted that the hypertension put him at a high risk for having a heart attack, stroke, or kidney problems. 

Analysis

Throughout, since the effective date of service connection in August 2008, the Veteran's hypertension with ED has been rated as 0 percent under 38 C.F.R. § 4.104, Code 7101. While he does not have a separate rating for ED under Code 7522, he has been awarded special monthly compensation (SMC) under 38 U.S.C.A. § 1114(k) and 38 C.F.R. § 3.350(a), for loss of use of a creative organ under 38 C.F.R. § 3.350, effective in August 2008 (the effective date for the award of service connection for hypertension with ED). 

In consideration of the evidence of record, summarized in large part above, the Board finds that there is no evidence to show that the Veteran's hypertension and Ed approximate the criteria for a higher rating. First, in regard to ED, there is no evidence of deformity of the penis, as specifically found on VA examination in 2008, so as to warrant a separate 20 percent rating under Code 7522, nor has the Veteran contended that such criterion is met. Therefore, ED, which the 2008 VA examiner concluded was probably the result of hypertension medications, is properly combined with the evaluation of hypertension. Second, the Veteran is not shown to have a hypertension with diastolic pressure predominantly 100 or more - currently and/or historically - or systolic pressure predominantly 160 or more, despite the need for continuous medication for blood pressure control for a substantial number of years before he even filed his claim for service connection for hypertension. In fact, as was noted in the factual summary above, the Veteran's diastolic and systolic pressures in nearly every instance were well below the threshold criteria listed in Code 7101 for a compensable (10 percent) rating. This is not to say that his blood pressure readings did not fluctuate or were elevated from time to time, but the evidence clearly demonstrates that the blood pressure readings did not meet the required levels set forth in Code 7101. 

Based on the foregoing, the Board concludes that for the entire period under consideration in this appeal, the preponderance of the evidence is against the award of a compensable schedular rating for hypertension with ED under Codes 7101 and 7522, and there are no other diagnostic codes under which he would be more appropriately evaluated. Thus, the benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b).

Extraschedular Rating

While the Board does not have authority to grant an extraschedular rating in the first instance, the Board does have the authority to decide whether a claim should be referred to the VA Director of the Compensation and Pension Service for consideration of an extraschedular rating under 38 C.F.R. § 3.321(b).

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular rating for a service-connected disability is inadequate. There must be a comparison between the level of severity and symptomatology of the service-connected disability with the established criteria. If the criteria reasonably describe the disability level and symptomatology, then the disability picture is contemplated by the rating schedule, and the assigned schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Peake, 22 Vet. App. 111 (2008). 

In comparing the disability level and symptomatology to the Rating Schedule, the degree of disability with regard to the hypertension with ED is wholly contemplated by the Rating Schedule, which provides for higher ratings for more severe symptoms for the disability. As articulated in the above discussion, the Veteran's hypertension is manifested by elevated blood pressure, which is covered by the schedular criteria of Code 7101, and his erectile dysfunction manifests as loss of erectile power, which is contemplated by the schedular criterion of Code 7522. In other words, the Veteran does not experience any symptomatology of his service-connected hypertension with Ed not already encompassed, contemplated, or covered in the Rating Schedule. 

Moreover, the Veteran has not asserted, and the evidence of record does not suggest, that the collective impact or combined effect of one or more service-connected disabilities presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). The compounding effects of the Veteran's hypertension with ED, in concert with his numerous other service-connected disabilities to include rhinitis, sinusitis, and sleep apnea, for example, are not shown to lead to marked interference with employment. The VA examiner in 2015 asserted that the Veteran's hypertension did not impact his ability to work. In light of the foregoing, the Board finds that the assigned schedular rating is adequate and that referral for consideration of an extraschedular rating for hypertension with erectile dysfunction under 38 C.F.R. § 3.321(b)(1) is not required.

VA grants a total rating for compensation purposes based on individual unemployability (TDIU) when the evidence shows that by reason of service-connected disability, or combination of disabilities, the veteran is precluded from obtaining or maintaining substantially gainful employment consistent with his or her education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16; see Johnson v. McDonald, 762 F.3d 1362, 1365 (Fed. Cir. 2014) (holding that TDIU is assigned based on the collective impact of service-connected disabilities). Here, it is not shown or alleged that the Veteran's hypertension with ED, either alone or in combination with his other service-connected disabilities, precludes him from being gainfully employed. As noted by the 2008 VA examiner, the Veteran was retired for a few years before he even filed his disability claim with the VA. In short, the evidence does not suggest that the Veteran hypertension with ED renders him incapable of maintaining employment. Accordingly, the matter of entitlement to a TDIU rating is not raised by the record in the context of this claim.


ORDER

A compensable rating for hypertension with ED is denied. 


REMAND

In August 2016 rhe Board remanded this case to the RO in part to afford the Veteran a VA examination to determine the nature and severity of his service-connected sinusitis. It was requested that the examiner distinguish any symptoms attributable to the sinusitis from the symptoms attributable to the service-connected rhinitis (which is not on appeal and which is presently rated at a maximum 30 percent on the basis of the presence of a polyp, although the most recent VA examination in September 2016 did not find polyps). It was also requested that the examiner address whether there was a basis for any loss of a sense of smell and/or taste as a result of the sinusitis or medication(s) prescribed for treatment of sinusitis. Regarding this latter instruction, it was noted that in statements in November 2010 and July 2016 the Veteran had complained of a chronic loss of a sense of taste and/or smell, and his private doctor had asserted in a March 2010 statement that the Veteran had suffered from chronic loss of a sense of smell "as a side effect of the medicines that he is taking" (not clarifying what medications to which he was referring). 

In September 2016 the Veteran underwent an examination, and in two separate reports the examiner described the Veteran's sinusitis (in one report) and his rhinitis (in the other report). In the sinusitis report, the examiner noted a symptom of a chronic running nose that responded to Flonase nasal spray, and seven or more non-incapacitating episodes of sinusitis characterized by headaches, pain, and purulent discharge or crusting occurring in the past 12 months (but no requirement of prolonged antibiotic treatment). The examiner did not specifically address whether there was any loss of a sense of smell and/or taste as a result of the Veteran's sinusitis or medications prescribed for sinusitis. As the examiner was not responsive to all the questions asked in the remand, the Board must return the case to the RO so that the Veteran may be re-examined in accordance with the directives set forth in the August 2016 remand. A remand is necessary to ensure compliance with the Board's directive. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

Accordingly, the case is REMANDED for the following:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should secure for the record any VA records of evaluation and treatment of the Veteran's sinusitis, which have not already been added to the file. 

2. The AOJ should thereafter arrange for the Veteran to be examined by an appropriate physician to ascertain the severity of his service-connected sinusitis. The examiner must review the Veteran's record in conjunction with the examination, and any tests or studies indicated should be completed. All findings should be reported in detail, and should include the number of any incapacitating episodes per year of sinusitis requiring prolonged antibiotic treatment and the number of any non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. To the extent possible, the examiner should distinguish any symptoms attributable to the service-connected sinusitis from the symptoms attributable to service-connected rhinitis (which is separately rated). 

The examiner should also specifically address whether there is an anatomical or pathological basis for any loss of a sense of smell and/or taste due to the Veteran's sinusitis or medication(s) prescribed for treatment of sinusitis. If so, the examiner should describe the severity of such loss, to include indicating whether such loss is complete or not.

All opinions must include rationale. 

3. The AOJ should then review the record and readjudicate the claim seeking increases in the ratings for sinusitis, to include consideration of whether a separate rating is warranted for loss of a sense of smell and/or taste associated with sinusitis. If the benefit sought remains denied, the AOJ should issue an appropriate SSOC, afford the Veteran and his representative opportunity to respond, and return the case to the Board. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs