# United States Court of Appeals for the Federal Circuit

---

**MARVIN O. JOHNSON,**
*Claimant-Appellant,*

v.

**ROBERT A. MCDONALD,**
**Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7104

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-1785, Judge Mary J. Schoelen.

---

Decided: August 6, 2014

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

MARTIN F. HOCKEY, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief STUART F. DELERY, Assistant Attorney General, and BRYANT G. SNEE, Acting Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and

MARTIE ADELMAN, Attorney, United States Department of
Veterans Affairs, of Washington, DC.

_____

Before MOORE, O'MALLEY, and CHEN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MOORE.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

MOORE, *Circuit Judge*.

Marvin O. Johnson appeals from the decision of the
Court of Appeals for Veterans Claims (Veterans Court)
denying his request for referral for extra-schedular con-
sideration of his service-connected disabilities. Because
the Veterans Court's interpretation of 38 C.F.R.
§ 3.321(b)(1), which governs referral for extra-schedular
consideration, contravenes the plain meaning of the
regulation, we *reverse* and *remand*.

I.

When determining compensation for service-
connected disabilities, the Department of Veterans Affairs
(DVA) generally assigns disability ratings based on a
schedule of ratings for specific injuries and diseases.
Ratings are typically assigned based on the degree of
disability and the effect it has on a veteran's earning
capacity, but are sometimes also based on other factors
such as effect on social functioning or effect on daily
activities. In some cases the schedular criteria are inade-
quate to capture the full extent and impact of the veter-
an's disability. The DVA has thus provided by regulation
that in such "[e]xceptional cases," the veteran may be
eligible for an "extra-schedular" disability rating. 38
C.F.R. § 3.321(b)(1). There is no dispute that § 3.321(b)(1)
entitles a veteran to consideration for referral for extra-
schedular evaluation based on an individual disability not
adequately captured by the schedular evaluations. This
appeal concerns whether § 3.321(b)(1) also entitles a

veteran to consideration for referral for extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations.

Mr. Johnson served in the U.S. Army from May 1970 to December 1971. Years after leaving the service, Mr. Johnson filed a claim for increased disability ratings for his service-connected disabilities, including rheumatic heart disease (then rated 10% disabling), and degenerative changes of the right and left knees (each knee rated 10% disabling). A DVA regional office (RO) denied Mr. Johnson's claims, finding that he was not entitled to a rating of total disability based on individual unemployability (TDIU). Mr. Johnson appealed to the Board of Veterans' Appeals (Board), and the Board affirmed the denial of Mr. Johnson's TDIU claim. The Board also denied Mr. Johnson's claim for extra-schedular consideration of the combined impact of his service-connected rheumatic heart disease and right knee disability under § 3.321(b)(1). Mr. Johnson appealed to the Veterans Court, arguing that the plain language of § 3.321(b)(1) requires the DVA to consider his disabilities both individually and collectively in deciding whether he was entitled to an extra-schedular evaluation.

In an en banc decision, a majority of the Veterans Court affirmed the Board. *Johnson v. Shinseki*, 26 Vet. App. 237, 248 (2013). It found the language of § 3.321(b)(1) ambiguous, explaining that "it is not clear from the language of the regulation whether an extra-schedular evaluation is to be awarded solely on a disability-by-disability basis or on the combined effect of a veteran's service-connected disabilities." *Id.* at 243. The Veterans Court concluded that, given the ambiguity in the language, it should defer to the DVA's interpretation of the regulation. *Id.* It found that the DVA interpreted § 3.321(b) in the Veterans Benefits Administration Adjudication Procedure Manual (VBA Manual) Rewrite M21-

1MR, Part III, Subpart. iv, chapter 6, § B.5.c, which states that a claim is to be submitted for extra-schedular consideration "if the schedular evaluations are considered inadequate for an individual disability." *Id.* at 244. The Veterans Court determined that the DVA's interpretation was entitled to substantial deference because it was not unreasonable, plainly erroneous, or inconsistent with the regulation and statutory scheme. *Id.* at 244–45. Based on the DVA's interpretation as reflected in the VBA Manual, the Veterans Court concluded that the Board was not required to consider whether Mr. Johnson was entitled to referral for extra-schedular consideration of his disabilities on a collective basis. *Id.* at 245.

Judge Moorman filed an opinion concurring in the result. *Id.* at 249 (Moorman, J., concurring). He explained that the plain language of § 3.321(b)(1) "on its face, appears most easily construed to convey only one meaning—that a veteran's *collective* service-connected disabilities may be considered in determining whether referral for an extraschedular rating is warranted." *Id.* at 248. However, he concluded that the DVA "has offered an alternative meaning for the language in the regulation that is plausible, albeit not obvious." *Id.* He explained that based on the "deference due to an agency in its interpretation of its own regulations, [he] reluctantly conclude[d] that the Secretary has presented a plausible, even though strained, alternative reading of § 3.321(b)(1) that warrants an affirmance of the Board's decision." *Id.* at 251.

Chief Judge Kasold dissented, concluding that § 3.321(b)(1) is not ambiguous. *Id.* at 254 (Kasold, C.J., dissenting). He stated that the plain language of the regulation calls for referral for extra-schedular consideration if the schedular evaluations are inadequate to compensate a veteran for his or her service-connected disabilities, either collectively or individually. *Id.* at 255–57. Judge Davis also filed a dissenting opinion, in which Judge Bartley joined. *Id.* at 265 (Davis, J., dissenting).

Judge Davis agreed with Chief Judge Kasold's dissent and emphasized that his dissent was "grounded in the conviction that the language of § 3.321(b)(1) unambiguously refutes the interpretation advanced by the Secretary." *Id.*

Mr. Johnson appeals. We have jurisdiction under 38 U.S.C. § 7292(a).

## II.

We review statutory and regulatory interpretations of the Veterans Court de novo. 38 U.S.C. § 7292(d)(1); *see also Prenzler v. Derwinski¸* 928 F.2d 392, 393 (Fed. Cir. 1991). Deference to an agency's interpretation of its own regulation "is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *see also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012). "An agency's interpretation of its own regulation is controlling unless that interpretation is plainly erroneous or inconsistent with the regulation." *Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997).

The DVA enacted § 3.321(b)(1) pursuant to 38 U.S.C. § 1155. Section 1155 authorizes the DVA to create a disabilities rating schedule and instructs the DVA to adopt schedular ratings to account for "reductions in earning capacity from specific injuries or *combination of injuries*." 38 U.S.C. § 1155 (emphasis added). Section 3.321(b)(1) provides as follows, in pertinent part:

> *To accord justice . . . to the exceptional case* where the *schedular evaluations* are found to be inadequate, the Under Secretary for Benefits or the Director . . . is authorized to approve on the basis of the criteria set forth in this paragraph *an extra-schedular evaluation* commensurate with the av-

erage earning capacity impairment due exclusively to the service-connected *disability or disabilities*. The governing norm in these exceptional cases is: A finding that the case presents such an *exceptional or unusual disability picture* with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 C.F.R. § 3.321(b)(1)(2012) (emphases added).

On appeal, Mr. Johnson argues that the Veterans Court misinterpreted § 3.321(b)(1). He contends that the plain language of the regulation requires the DVA to consider the combined effect of all of a veteran's service-connected disabilities in determining whether referral for extra-schedular evaluation is appropriate. The government counters that the plain language of § 3.321(b)(1) indicates that it applies only to the impact of disabilities individually, not collectively. In the alternative, the government argues that the regulation is ambiguous and that, given this ambiguity, we should defer to the interpretation of the DVA.

We agree with Mr. Johnson. The plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities. The regulation is specifically directed to the "exceptional case where the schedular evaluations" are inadequate. 38 C.F.R. § 3.321(b)(1). The use of the plural "evaluations" suggests that the regulation contemplates a situation in which evaluations assigned to multiple disabilities are inadequate. Indeed, the regulation authorizes "an extra-schedular evaluation" where "the schedular evaluations" are inadequate to compensate for impairment due to "the service-connected disability or disabilities." The use of "disability or disabilities" indicates that the regulation contemplates that multiple disabilities may

be considered together in referring veterans for extra-schedular consideration. Similarly, the fact that the regulation authorizes a single extra-schedular evaluation—"an extra-schedular evaluation"—arising from the "disability or disabilities" indicates that referral for extra-schedular evaluation may be based on the collective impact of the veteran's disabilities. Moreover, the plain language of § 3.321(b)(1) is consistent with the language of § 1155 authorizing the regulation. 38 U.S.C. § 1155 (authorizing the Secretary to "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries").

We are not persuaded by the government's argument that the term "disability picture" in the regulation must be construed as limited to the impact of a single disability rather than multiple disabilities. Even if the term disability picture as used in other sections of the DVA regulations were construed as referring to the impact of a single disability, that is not the case with respect to § 3.321(b)(1). The clear language and the use of the term "disability picture" in the context of § 3.321(b)(1) refers to the collective impact of a veteran's "service-connected disability or disabilities."

Seeking to overcome the plain language of the regulation, the government further argues that the our interpretation of § 3.321(b)(1) cannot be correct because another provision, the TDIU provision at 38 C.F.R. § 4.16, is already designed to address the situation where schedular evaluations are insufficient to account for the collective impact of multiple disabilities. We disagree. As the government itself notes, the TDIU provision only accounts for instances in which a veteran's combined disabilities establish total unemployability, *i.e.*, a disability rating of 100 percent. Appellee's Br. at 26. On the other hand, § 3.321(b)(1) performs a gap-filling function. It accounts for situations in which a veteran's overall disability picture establishes something less than total unemploya-

bility, but where the collective impact of a veteran's disabilities are nonetheless inadequately represented. Our plain-language interpretation of § 3.321(b)(1) does not render it duplicative of the TDIU provision of § 4.16.

Because we find that the plain language of § 3.321(b)(1) is unambiguous, we do not defer to the DVA's interpretation of its regulation. *See Christensen*, 529 U.S. at 588. The government cannot manufacture an ambiguity in language where none exists in order to redefine the plain language of a regulation. As Chief Judge Kasold noted, "simply saying something is ambiguous does not make it so." *Johnson*, 27 Vet. App. at 254 (Kasold, C.J., dissenting). And we find no ambiguity in the language of § 3.321(b)(1).

We further note that, while policy arguments would not, in any case, persuade us to depart from the plain language of the regulation, we see no policy justification for interpreting § 3.321(b)(1) in the way that the government advocates. The purpose of the regulation is "[t]o accord justice . . . to the exceptional case where the schedular evaluations are found to be inadequate." 38 C.F.R. § 3.321(b)(1). There is no logic to the idea that it is only necessary to accord justice based on a veteran's individual disabilities and not also on the collective impact of all of the veteran's disabilities. Limiting referrals for extraschedular evaluation to considering a veteran's disabilities individually ignores the compounding negative effects that each individual disability may have on the veteran's other disabilities. It is not difficult to imagine that, in many cases, the collective impact of all of a veteran's disabilities could be greater than the sum of each individual disability's impact. The regulation itself makes clear that it is meant to cover "an exceptional or unusual disability picture," where the regular rating standards simply would not adequately cover the extent of a veteran's disability. Given the intention of the regulation, the government's argument that the consideration of the need

for extra-schedular review should occur by evaluating each disability individually, without considering the impact on a veteran of his or her collective disability picture, seems difficult to defend.

## CONCLUSION

We *reverse* and *remand* to the Veterans Court for further proceedings in accordance with this opinion.

**REVERSED AND REMANDED**

# United States Court of Appeals for the Federal Circuit

---

**MARVIN O. JOHNSON,**
*Claimant-Appellant,*

**v.**

**ROBERT A. MCDONALD,**
**Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7104

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-1785, Judge Mary J. Schoelen.

---

O'MALLEY, *Circuit Judge*, concurring.

I agree with the majority's well-reasoned analysis and with the judgment it reaches. I write separately only to note that, if the regulation here were deemed sufficiently ambiguous to require application of *Auer* deference, I believe this is a case in which the wisdom of continued adherence to that principle should be reconsidered. *See Auer v. Robbins*, 519 U.S. 452 (1997).

Several Supreme Court Justices have recently expressed an interest in revisiting the propriety of the principles set forth in *Auer* and in *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945). *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1339 (2013) (Scalia, J.,

concurring-in-part, dissenting-in-part) ("For decades, and for no good reason, we have been giving agencies the authority to say what their rules mean, under the harmless-sounding banner of 'defer[ring] to an agency's interpretation of its own regulations.'" (citing *Talk Am., Inc. v. Mich. Bell Tel. Co.*, 131 S. Ct. 2254, 2265 (2011) (Scalia, J., concurring))). Chief Justice Roberts, writing for himself and Justice Alito in *Decker*, recognized that: (1) "[q]uestions of *Seminole Rock* and *Auer* deference arise as a matter of course on a regular basis;" and (2) "there is some interest in reconsidering those cases." *Decker,* 133 S. Ct. at 1339 (Roberts, C.J., concurring).

While some level of deference may be appropriate, there is a concern that "deferring to an agency's interpretation of its own rule encourages the agency to enact vague rules which give it the power, in future adjudications, to do what it pleases. This frustrates the notice and predictability purposes of rulemaking, and promotes arbitrary government." *Talk Am.*, 131 S. Ct. at 2266 (Scalia, J., concurring). I agree with Justice Scalia's concerns that:

> however great may be the efficiency gains derived from *Auer* deference, beneficial effect cannot justify a rule that not only has no principled basis but contravenes one of the great rules of separation of powers: He who writes a law must not adjudge its violation.

*Decker*, 133 S. Ct. at 1342 (Scalia, J., concurring-in-part, dissenting-in-part).

Questions regarding the appropriate level of deference given to an agency's interpretation of its own regulation are even more complex in the veterans' benefit context, where the Supreme Court has "long applied the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *See Henderson v. Shinseki*, 131 S. Ct. 1197, 1206 (2011)

(citation and internal quotation marks omitted); *see also Brown v. Gardner*, 513 U.S. 115, 118 (1994) (noting that "interpretive doubt is to be resolved in the veteran's favor"). Where there is a conflict between an agency's reasonable interpretation of an ambiguous regulation and a more veteran-friendly interpretation, it is unclear which interpretation controls. *See* Linda D. Jellum, *Heads I Win, Tails You Lose: Reconciling Brown v. Gardner's Presumption that Interpretive Doubt Be Resolved in Veterans' Favor with Chevron*, 61 Am. U. L. Rev. 59, 77 n.141 (2011) ("If an agency's interpretation of its regulation must be 'plainly wrong' before the court can reject that interpretation, there can be little place for Gardner's [veteran-friendly] Presumption; the VA's interpretation would have to be plainly wrong before it was rejected.").

The majority here cites *Seminole Rock* and *Auer*—which are binding Supreme Court precedent—and explains that deference to an agency's interpretation of its own regulation is warranted only when the language of the regulation is ambiguous. Because I agree with the majority that 38 C.F.R. § 3.321(b)(1) is unambiguous—and thus there is no need to apply *Auer* deference—I join the majority's decision. I note, however, that the validity of *Auer* deference is questionable, both generally and specifically as it relates to veterans' benefit cases.