In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 15-2640

NORTHERN ILLINOIS SERVICE COMPANY,

*Petitioner,*

*v.*

THOMAS PEREZ, Secretary of Labor, *et al.*,

*Respondents.*

---

Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission
Nos. LAKE 2013-616-M, *et al.*

---

ARGUED APRIL 1, 2016 — DECIDED APRIL 27, 2016

---

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Among its other activities, Northern Illinois Service Company operates portable rock-crushing units that it dispatches to quarries as needed. When inspecting some of these units, the Mine Safety and Health Administration concluded that Northern Illinois had failed to comply with some safety regulations. Inspectors issued

nine citations. The company contested all nine and prevailed in part before an administrative law judge. The ALJ found six violations and labeled all six non-serious. 37 FMSHRC 1225 (June 5, 2015). He ordered Northern Illinois to pay $100 per violation. After the Federal Mine Safety and Health Review Commission denied its application for discretionary review, Northern Illinois petitioned for judicial review of two of those six. One wonders why the company is paying a lawyer many thousands of dollars to contest a $200 penalty, but that's its prerogative.

The first violation arises from the company's failure to fasten a bungee cord in front of two gas cylinders in the shop at one mine. The cord had been removed the last time one of the cylinders had been used, and whoever did this failed to put it back; the inspector found the cord near the storage rack. The ALJ concluded that this omission (which he called both "inadvertent" and "not serious") violated 30 C.F.R. §56.16005, which requires mine operators to store pressurized gasses "in a safe manner". The lack of a cord made the storage unsafe, the ALJ thought, because an unrestrained cylinder might tip over, and the fall could break or open the valve; escaping gasses might cause the heavy cylinder to scoot around the smooth floor, potentially injuring someone—though the ALJ allowed that this was unlikely, which explains calling the violation non-serious and setting the penalty at $100.

According to the company, the Administration did not have "jurisdiction" to impose a penalty, because, although the cylinder was *stored* at a mine, it was *used* offsite. We don't understand what this has to do with jurisdiction, which in federal law means adjudicatory competence. See, e.g., *Union*

*Pacific R.R. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 81–85 (2009) (applying this understanding to an administrative agency). Cf. *United States v. Martin*, 147 F.3d 529, 531–33 (7th Cir. 1998) (the interstate-commerce element in many federal statutes concerns the merits rather than subject-matter jurisdiction). The distinction between jurisdiction and the merits is one of long standing. See, e.g., *Bell v. Hood*, 327 U.S. 678 (1946). If the agency had failed to show that the company was engaged in mining, or that the cylinder was connected to mining, it would have lost on the merits.

As for the difference between where the cylinder was stored and where it was used: the regulation asks where it posed a risk to safety. For a cylinder stored at a mine, the risk posed by falling on the floor occurs at the mine. Likewise if a banana peel were found on the floor at a mine, posing a slipping hazard, it would not be necessary to prove that the banana had been used to dig limestone.

The second penalty also stems from something that fell to the floor. According to 30 C.F.R. §56.12018 "[p]rincipal power switches shall be labeled to show which units they control, unless identification can be made readily by location." A trailer housing one mining unit's generator had eight power switches. Seven of these were labeled, but the eighth label had fallen off. The inspector could not determine "by location" what the unlabeled switch controlled, and he issued a citation. A test revealed that the switch controlled a conveyor belt that had not been used in three or four years. The ALJ thought that the unlabeled switch was risky, because someone standing on the belt when it was unexpectedly moved might have been seriously injured. But as with the unsecured cylinder, the ALJ deemed this risk low because the belt

was disused and the miners had a "pretty good understanding" what all eight switches did. Again the penalty was correspondingly modest.

The company contends that the ALJ explained his decision inadequately, but it is thorough and covers the important issues. The company really means that in its view the ALJ applied the regulation incorrectly. It stresses that the regulation speaks of "units" in the plural, while the company's trailer had only one unlabeled switch. Yet it is a principle of legal interpretation that the plural includes the singular. 1 U.S.C. §1 ¶2. Under this statute, known as the Dictionary Act, drafters can use either the singular or the plural knowing that judges will treat each as including the other "unless the context indicates otherwise". Statutes and regulations are long enough as they are without forcing drafters to include both the singular and the plural every time. Observing that on occasion a plural construction really is designed to limit coverage to multiple instances, drafting guides recommend use of the singular for clarity. See, e.g., Bryan A. Garner, *Guidelines for Drafting and Editing Legislation* §2.4 (2016); *Senate Legislative Drafting Manual* §104(a) (1997). But as the company does not contend that either the linguistic or economic context of §56.12018 implies a limit to more than one unit at a location—why *would* the Administration devise such a limit in such a backhanded way?—we apply the norm from the Dictionary Act.

The company also sees a problem in the fact that this is the first time the Administration has called a switch controlling a conveyor belt a "principal" power switch. It would be folly for a regulator to try to list all of the kinds of equipment that could be found in or near a mine, sorting each into

"principal" and "other" piles. The problem is not simply that the set of all mining equipment is big, and always changing, but that what might be a "principal" component of one mine could be trivial at another. That's why regulations usually contain general words, such as "principal" or "material," while leaving detail to adjudication. That's the common-law process, which agencies no less than courts are entitled to use. See, e.g., *NLRB v. Bell Aerospace Co.*, 416 U.S. 267 (1974). The ALJ did not exceed his authority in treating as "principal" a switch controlling a conveyor belt that had the potential to injure persons standing on it when it starts to move.

The petition for review is denied.