# United States Court of Appeals for the Federal Circuit

———————————

**NATIONAL ORGANIZATION OF VETERANS'
ADVOCATES, INC.,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

———————————

2018-1391

———————————

Petition for review pursuant to 38 U.S.C. Section 502.

———————————

Decided: June 24, 2019

———————————

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for petitioner.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM, JOSEPH H. HUNT; MARTIE ADELMAN, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before DYK, WALLACH, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge*.

The National Organization of Veterans' Advocates, Inc. ("NOVA") challenges the validity of a rule promulgated by the Veterans Administration ("VA"). The rule is a 2017 amendment to 38 C.F.R. § 3.321(b)(1). The amended regulation cabined the preexisting regulation (as interpreted by this court in *Johnson v. McDonald*, 762 F.3d 1362 (Fed. Cir. 2014)). The amended regulation authorizes the VA "[t]o accord justice to the exceptional case where the schedular evaluation is inadequate to rate a <u>single service-connected disability</u>," by adopting "an extra-schedular evaluation commensurate with the average impairment of earning capacity due exclusively to <u>the disability</u>." 38 C.F.R. § 3.321(b)(1) (2017) (emphases added). Unlike the previous version, the regulation does not permit the VA to award extra-schedular disability compensation by considering the synergistic impact of multiple disabilities together.

We deny NOVA's petition and hold that the 2017 amendment is not on its face arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

BACKGROUND

I

One of the primary tasks of the VA is to process claims for service-connected disability benefits sought by veterans. Once the VA has determined the existence of a disability, the VA must rate the disability, that is, determine the degree to which the veteran's earning capacity has been diminished. In that connection, the statute provides:

The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the

average impairments of earning capacity resulting from such injuries in civil occupations. . . .

38 U.S.C. § 1155.

Pursuant to this statute, the VA rates disabilities according to a rating schedule that takes into account the veteran's degree of disability and the effect of that disability on the veteran's earning capacity. For example, where the veteran suffered a service-connected injury with a small impact on his earning capacity, he might be assigned a 20% rating. But if the veteran suffered a more serious injury that had a greater impact on the veteran's earning capacity, that veteran would receive a higher rating.

The regulation at issue in this case, 38 C.F.R. § 3.321(b)(1), was designed to address exceptional situations in which the schedular rating for a single disability alone is inadequate to reflect the actual level of the earning impairment on the veteran. Before this regulation was amended in 2017, it provided:

> To accord justice . . . to <u>the exceptional case where the schedular evaluations are found to be inadequate</u>, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph <u>an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities</u>. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 C.F.R. § 3.321(b)(1) (2014) (emphases added).

Thus, this regulation provided for extra-schedular rating of the veteran's disabilities where the Board of Veterans Appeals ("Board") or regional office determined that the schedular evaluation "does not contemplate the claimant's same symptomatology or level of disability" and that the veteran's disability picture evinces "related factors such as marked interference with employment or frequent periods of hospitalization." Barton F. Stichman et al., Veterans Benefits Manual § 5.3 (2017–18 ed.); *see also Thun v. Peake*, 22 Vet. App. 111, 115–16 (2008), *aff'd*, 572 F.3d 1366 (Fed. Cir. 2009).

## II

The present controversy arises from the fact that, in many cases, the veteran has more than one disability. Where a veteran suffers from more than one disability, the VA generally combines the individual disability ratings pursuant to a "combined ratings table" set forth in 38 C.F.R. § 4.25. The formula on which the table is based requires that the disabilities first be "arranged in the exact order of their severity, beginning with the greatest disability." 38 C.F.R. § 4.25(a). The percent efficiency for the highest rated disability is then determined—e.g., if a disability earns a 60% rating, the efficiency is 40%. *Id.* From there, the percent efficiency corresponding to the next highest rated disability is determined, and the first and second percent efficiencies are multiplied. *Id.* If there are more than two disability ratings, the process is then repeated with each lesser rating. *Id.* This results in an overall percent efficiency, which must then be converted to a corresponding disability rating.[1] *Id.* This number is then

---

[1]    This calculation can be expressed in mathematical terms: Combined Rating = $1 - [(1 - \%rating_1)(1 - \%rating_2)]$. Thus, if a veteran received two disability ratings of 60% and 30%, the combined disability rating could be found using the equation as follows:

rounded "to the nearest degree divisible by 10, adjusting final 5's upward." *Id.*[2]

Section 4.25 operates the same way in the case of extra-schedular ratings for multiple disabilities. Section 3.321(b)(1) requires considering whether each individual disability should result in an extra-schedular rating so that multiple disabilities can result in multiple extra-schedular ratings. There is no dispute that § 4.25 requires the VA to combine multiple disabilities resulting from extra-schedular ratings under § 3.321(b)(1). This approval is indeed recognized in the current rulemaking where the VA made clear that "a veteran would be entitled to an extra-

---

$$\text{Combined Rating} = 1 - [(1 - 0.6)(1 - 0.3)] = 0.72$$

The calculation would thus yield a total combined rating of 72%, which is confirmed by the chart in 38 C.F.R. § 4.25. Per the regulation, 72% would be rounded to the nearest value divisible by 10, or 70%.

[2] The VA has promulgated a few regulations that grant particular ratings for certain combinations of disabilities. For example, in the case of muscle injuries, 38 C.F.R. § 4.55(e) provides that "[f]or compensable muscle group injuries which are in the same anatomical region but do not act on the same joint, the evaluation for the most severely injured muscle group will be increased by one level and used as the combined evaluation for the affected muscle groups." Another regulation, 38 C.F.R. § 4.26, also provides a special rating where a veteran has bilateral service-connected disabilities—e.g. if the veteran's "partial disability results from disease or injury of both arms, or of both legs, or of paired skeletal muscles." In such cases, "the ratings for the disabilities of the right and left sides will be combined as usual, and 10 percent of this value will be added (i.e., not combined) before proceeding with further combinations or converting to degree of disability." *Id.*

schedular rating for each service-connected disability that satisfies the criteria in the rule." Extra-Schedular Evaluations for Individual Disabilities, 82 Fed. Reg. 57,830, 57,832 (Dec. 8, 2017).

However, for many years, the VA interpreted § 3.321(b)(1) to bar consideration of the synergistic effect of multiple disabilities. In other words, where a veteran had multiple disabilities that together formed that veteran's disability picture, the VA was required to evaluate each disability in isolation to determine to what extent extra-schedular rating was appropriate for each, and then to combine those ratings through the methodology set forth in 38 C.F.R. § 4.25. But the VA would not consider the two disabilities together in arriving at the extra-schedular rating for the most prominent disability.

This methodology was challenged in *Johnson* as being contrary to the plain language of the regulation. We agreed. We held that the plain language of the regulation, using the plural "evaluations" and "disabilities," unambiguously indicated that the combined effect of multiple disabilities could be considered in determining an extra-schedular rating for a single disability. *Id.* at 1365–66. This court also concluded that such an understanding of the regulation was consistent with the text of § 1155, which authorizes the Secretary to "adopt and apply a schedule of ratings of reductions in earning capacity from . . . [a] combination of injuries." 38 U.S.C § 1155; *Johnson*, 762 F.3d at 1365.

III

Following *Johnson*, the VA commenced the present rulemaking proceeding. On April 20, 2016, the VA issued a Notice of Proposed Rulemaking, which recognized that this court in *Johnson* had interpreted its previous regulation contrary to the VA's longstanding interpretation. The stated purpose of the proposed amendment was to "clarify VA's regulation pertaining to exceptional compensation

claims such that an extra-schedular evaluation is available only for an individual service-connected disability but not for the combined effect of more than one service-connected disability"—i.e., confirming the VA's interpretation of the old regulation prior to *Johnson*. Extra-Schedular Evaluations for Individual Disabilities, 81 Fed. Reg. 23,228, 23,228 (Apr. 20, 2016). The final, amended rule was published in the Federal Register on December 8, 2017, and provides (with relevant changes underscored):

> To accord justice to the exceptional case where the schedular evaluation is inadequate to rate a single service-connected disability, the Director of Compensation Service or his or her delegate is authorized to approve on the basis of the criteria set forth in this paragraph (b), an extra-schedular evaluation commensurate with the average impairment of earning capacity due exclusively to the disability. The governing norm in these exceptional cases is a finding by the Director of Compensation Service or delegatee that application of the regular schedular standards is impractical because the disability is so exceptional or unusual due to such related factors as marked interference with employment or frequent periods of hospitalization.

38 C.F.R. § 3.321(b)(1) (2017) (emphases added). The VA deleted any reference to the plural, "disabilities," so that extra-schedular ratings could only be provided based on considering each disability individually and then combining the effect under § 4.25. It would not consider the synergistic effect, if any, of multiple disabilities on the rating for a single disability.

NOVA timely petitioned this court for review of the final rule. We have jurisdiction under 38 U.S.C. § 502.

DISCUSSION

I

On review, NOVA does not contend that the VA lacked statutory authority to change its rule or that the amended regulation is inconsistent with the statute (38 U.S.C. § 1155). Nor could such a challenge succeed given that the statute does not refer to extra-schedular ratings or require that the VA adopt extra-schedular ratings. NOVA also does not contend that the language of the amended regulation failed to effectuate a change or that the language of the amended regulation is unclear. On its face, the amended regulation deletes the language referring to "disabilities" in the plural, the very language that *Johnson* held required the consideration of the synergistic effect of multiple disabilities. *Johnson*, 762 F.3d at 1365–66.

NOVA instead contends that the VA's action in making the change was arbitrary and capricious. NOVA's argument amounts to essentially a complaint that the VA's general rule for evaluating extra-schedular ratings is arbitrary because it does not take into account the full extent of a veteran's overall disability in cases of multiple disabilities (i.e., it does not permit the VA to look to the synergistic effect of multiple disabilities), and because the VA did not adequately explain why it was not feasible or desirable to take account of the synergistic effect of multiple disabilities.

We review petitions challenging a rulemaking under 38 U.S.C. § 502 to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 5 U.S.C. § 706; *Paralyzed Veterans of Am., Inc. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1339 (Fed. Cir. 2003). "This review is 'highly deferential' to the actions of the agency." *Paralyzed Veterans*, 345 F.3d at 1340 (quoting *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1372 (Fed. Cir. 2001)). The same standard of review applies to the amendment of

a regulation as applies to a regulation's adoption. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–15 (2009). Where there is a "rational connection between the facts found and the choice made," a regulation is not arbitrary and capricious. *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 669 F.3d 1340, 1348 (Fed. Cir. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Under this deferential standard, we conclude that the VA's explanation for the change was adequate and that the regulation is not on its face arbitrary and capricious. First, contrary to the petitioner's argument, the amended regulation does not limit "extraschedular rating to a single service connected disability." Petitioner's Br. 8. As we have explained earlier, the regulation provides for combining multiple disabilities, albeit not in the manner the petitioner suggests is appropriate.[3]

The VA also explained that a regulation requiring consideration of the synergistic effects of multiple disabilities would be untenable because it would be difficult to administer in a "logical and consistent manner." 82 Fed. Reg. at 57,831. In order to award an extra-schedular rating, a determination must be made that "existing rating-schedule

---

[3]    In the final rulemaking, the VA stated that

> the claimant could, under this rule, seek extra-schedular ratings for the individual conditions and VA would be required to evaluate the medical evidence in determining whether the rating schedule was adequate to evaluate each disabling condition, but would not be required to separately determine whether the combined rating resulting from 38 C.F.R. 4.25 was adequate to evaluate the combined effects of the multiple disabilities.

82 Fed. Reg. at 57,833.

provisions are inadequate to evaluate a particular claimant's disability." *Id.* This determination "requires comparison of the manifestations of the claimant's disability with the types of manifestations listed in the applicable rating schedule provisions." *Id.* The rating schedule for individual disabilities describes the manifestations of each disability and therefore serves as a baseline from which a decisionmaker can determine whether the rating accounts for a veteran's particular disability picture.

On the other hand, "[r]atings for combinations of disabilities are determined by application of a standard formula in 38 C.F.R. [§] 4.25, and there are thus no provisions in the rating schedule describing impairments that would be associated with [the synergistic effects of] a particular combination of disabilities." *Id.* Accordingly, the VA explained that "VA adjudicators would have no objective standard for determining whether a particular combined rating is adequate or inadequate." *Id.* The VA contends that this would "lead to inconsistent and highly subjective determinations, and would likely cause delays in the adjudication of claims"—effects that would "be detrimental to claimants and to the effective operation of VA's claims-adjudication system." *Id.*

The VA also explained that its amendment to the regulation is consistent with the agency's historical interpretation of the regulation and its predecessors. Since 1936, the VA "has interpreted section 3.321(b)(1) [and its predecessor regulation] to provide for extra-schedular evaluation for each service-connected disability for which the schedular evaluation is inadequate based upon the regulatory criteria." *Id.* This interpretation has been reflected in the Department of Veterans Benefits Veterans Administration Manual. *See* 82 Fed. Reg. at 57,832. The fact that our court concluded that the language of the earlier regulation required contrary interpretation does not undermine the VA's showing as to the intended effect of the earlier regulation.

According to the VA, the amended formulation of the regulation also makes sense in light of the regulatory scheme of which § 3.321(b)(1) is a part. The VA noted that "there is a distinction between the application of the schedular criteria relating to specific disabilities and the application of the formula . . . for combining individual disability ratings." 82 Fed. Reg. at 57,832. To this end, the VA pointed out that regulations other than § 3.321(b)(1) already prescribe how combinations of disabilities should be rated. For example, 38 C.F.R. § 4.25 provides a formula for combining individual disability ratings. And this formula for combining disability ratings applies equally to extra-schedular ratings.

There is no reason to assume that the "VA may only 'accord justice' if all service-connected disabilities are considered collectively for deciding entitlement to an extra-schedular evaluation." 82 Fed. Reg. at 57,832. Nor is there reason to believe that justice may only be served by requiring ad hoc adjudications of whether combinations of disabilities deserve extra-schedular rating.[4]

## II

To be sure, another regulation not at issue here, 38 C.F.R. § 4.16, authorizes a deciding official to take into account a veteran's "overall impairment" and "determine whether the veteran is employable regardless of the particular disability rating or combination of disability ratings awarded." 82 Fed. Reg. at 57,833. On this basis, a deciding official may determine that a veteran qualifies for a total disability ("TDIU") rating even though the combination of disabilities from which the veteran suffers does not

---

[4]   The VA's amendment to § 3.321(b)(1) also does not defeat veterans' reliance interests as NOVA contends, because the amendment is applied only prospectively. 82 Fed. Reg. at 57,830.

otherwise qualify the veteran for such a rating. Section 4.16(b) thus authorizes a rating above what the combined schedular ratings for multiple disabilities would otherwise authorize if the veteran has been "unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities." But this determination can be made consistently across the board because it requires only a determination of total unemployability. We see no inconsistency in allowing a TDIU rating based on the combined effect of multiple disabilities and declining to follow that approach outside of the TDIU context.

Significantly, during the rulemaking NOVA did not articulate an alternative regulation for extra-schedular rating that would provide workable criteria for evaluating the synergistic effect of multiple disabilities on earning capacity. NOVA's petition thus presents us with a choice between an entirely ad hoc process of combining disability ratings and a generally applicable legislative rule for combining disability ratings, the effects of which are tempered by the case-by-case determination of TDIU to allow for the combined effects of multiple disabilities that result in total disability.

As the Supreme Court has numerous times recognized, agencies may conclude that rulemaking is superior to case-by-case adjudication. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113–14 (2009) (explaining that "the rulemaking process has important virtues" as compared to adjudication); *Allentown Mack Sales & Serv., Inc. v. Nat'l Labor Relations Bd.*, 522 U.S. 359, 375 (1998) (noting that rulemaking "promotes sound results"); *Petroleum Refiners Ass'n v. Fed. Trade Comm'n*, 482 F.2d 672, 681–82 (D.C. Cir. 1974) ("Increasingly, courts are recognizing that use of rule-making to make innovations in agency policy may actually be fairer to regulated parties than total reliance on case-by-case adjudication."). In addition to increasing efficiency and political accountability:

> Legislative rules provide affected parties with clearer advance notice of permissible and impermissible conduct; they avoid the widely disparate temporal impact of 'rules' announced and applied through adjudicatory decisionmaking; they reduce the incidence and magnitude of interdecisional inconsistencies in implementing the regulatory and benefit programs; and, they allow all potentially affected members of the public an opportunity to participate in the process of determining the rules that affect them.

Kristin E. Hickman & Richard J. Pierce, Jr., Administrative Law Treatise § 4.8, at 522 (6th ed. 2019). The decision "between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." *Securities & Exchange Comm'n v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 203 (1947).

## III

To the extent that NOVA contends that the change was arbitrary because the VA rule fails to capture the full extent of the synergistic effects of multiple disabilities, we note that NOVA has failed in its brief or opening argument to provide a single example where this is the case. Nor did our decision in *Johnson* identify such examples, noting only that "[i]t is not difficult to imagine that, in many cases, the collective impact of all of a veteran's disabilities could be greater than the sum of each individual disability's impact." 762 F.3d at 1366. This does not suffice to overcome what we otherwise find to be reasonable justifications for the VA's amendment of § 3.321(b)(1).

For the first time in its rebuttal oral argument, NOVA attempted to identify a situation in which the VA's regulation would be inadequate to accomplish its stated purpose of "accord[ing] justice to the exceptional case where

schedular evaluation is inadequate."[5]  NOVA described the case of "a veteran who is service-connected for post-traumatic stress disorder" but does not meet the criteria for TDIU.  Oral Argument at 30:54–31:01, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 18-1391.mp3.  NOVA also described the veteran to have tinnitus (i.e., ringing in the ears), which receives a rating of 10%—a non-compensable rating.  Oral Arg. at 31:05–10.  The tinnitus aggravates his PTSD:  "The ringing in [his] ears becomes a distraction at work, it becomes a frustration, it aggravates his symptoms of post-traumatic stress disorder . . . [and] creates a situation in which the constant ringing in the ears prevents him from answering the phone, it prevents him from making calls, it prevents him from being able to hear and interact with other people."  Oral Arg. at 31:23–48.  In other words, the veteran's tinnitus can "go through the whole series of triggers for the symptoms of [his] service-connected [PTSD]."  Oral Arg. 31:52–32:00.

---

[5]  We are aware of at least one post-*Johnson* example, in the form of a comment to the VA's notice of proposed rulemaking, that purportedly exemplifies a case in which there exists "a particular harm that VA's [amended] rule would inflict upon veterans."  J.A. 36; *see also* 82 Fed. Reg. at 57,833; *Yancy v. McDonald*, 27 Vet. App. 484 (2016).  In *Yancy*, the veteran had service-connected, bilateral foot disabilities, knee disabilities, and hemorrhoids.  *Yancy*, 27 Vet. App. at 496.  Because the veteran could not "stand *or* sit for long periods of time" as a result of this combination, the Court of Appeals for Veterans Claims remanded the case for consideration of whether the veteran was entitled to a "referral for extraschedular consideration based on [the veteran's] service-connected disabilities on a collective basis."  *Id.*

NOVA contends that in such circumstances, looking to the veteran's individual disabilities in isolation—rather than to the synergistic effect that tinnitus and PTSD together exhibit—would not have the intended effect of "doing justice when the rating schedule is inadequate." Oral Arg. at 32:10–17. To accomplish this objective, NOVA argues that is it necessary to "look at the totality." Oral Arg. at 32:17–22.

Though there may be situations in which the rules may not account for the unique facts of every single case, this does not demonstrate that the rule is on its face arbitrary and capricious or that case-by-case adjudication is required in the absence of a showing that the rule fails to take account of a significant number of such situations. No such showing has been made here. Agency regulations are often by their very nature broad, bright-line rules that are drafted in view of the ease and consistency with which they can be administered and, in some respects, address the problem imperfectly. *See Edwards v. Dewalt*, 681 F.3d 780, 785–87 (6th Cir. 2012) (upholding a bright-line rule); *Fisherman's Dock Co-op., Inc. v. Brown*, 75 F.3d 164, 172–73 (4th Cir. 1996) (recognizing that "arbitrariness . . . is inherent in the exercise of [an agency's] discretion amid uncertainty"); *see also Lopez v. Davis*, 531 U.S. 230, 243–44 (2001).

The VA reasonably concluded that determination of an extra-schedular rating with respect to a single disability is likely to result in a more logical and consistent system of extra-schedular rating than one in which the decisionmaker must determine on an ad hoc basis whether extra-schedular rating is appropriate for the synergistic effect of a combination of disabilities. The VA could also reasonably conclude that "[r]equiring adjudicators to consider the adequacy of combined ratings . . . would likely cause delays in the adjudication of claims . . . . [which] would in some respects be detrimental to claimants and the effective operation of VA's claims-adjudication system." 82

Fed. Reg. at 57,831; *see Monk v. Shulkin*, 855 F.3d 1312, 1317–18 (Fed. Cir. 2017) (summarizing the extent of the VA backlog as of 2017). Courts have consistently recognized the propriety of considering such pragmatic issues, like ease of administration and efficiency. *See, e.g.*, *World-Com, Inc. v. F.C.C.*, 238 F.3d 449, 459 (D.C. Cir. 2001) (F.C.C. was not arbitrary and capricious "to make ease of administration and enforceability a consideration in setting its standard for regulatory relief").

IV

Finally, we note that in sustaining the rule on its face we have no occasion to decide whether a veteran in an exceptional future case could succeed in demonstrating that the application of the amended regulation to the veteran's particular circumstances was arbitrary because the VA's approach failed to capture the full extent of the veteran's disability and was in the circumstances unsustainable. *See EME Homer City Generation, L.P. v. E.P.A.*, 795 F.3d 118, 123–24 (D.C. Cir. 2015) (as-applied challenge still available after facial challenge rejected); *Lomont v. O'Neill*, 285 F.3d 9, 17–18 (D.C. Cir. 2002) (sustaining regulations against facial attack and declining to decide "whether, in a particular action, the regulations would be arbitrary and capricious"); *Buongiorno v. Sullivan*, 912 F.2d 504, 510 (D.C. Cir. 1990) (leaving open petitioner's as-applied challenge to a regulation even after concluding that the regulation was not arbitrary and capricious on its face). Our holding here should not be read to preclude an as-applied challenge that application of the amended regulation in an exceptional case yields a result so patently unfair as to make the rule's application arbitrary and capricious.

CONCLUSION

Because we do not find that the VA's amendment to 38 C.F.R. § 3.321(b)(1) is on its face arbitrary, capricious, or otherwise not in accordance with the law, we decline to find the rule unlawful and deny NOVA's petition.

**DENIED**

COSTS

No costs.