# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-3242

JAMES J. PERCIAVALLE, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 17, 2019)                Decided October 25, 2019)

*Michael S. Just*, of Providence, Rhode Island, for the appellant.

*Dustin P. Elias*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Richard A. Daley*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, GREENBERG, and TOTH, *Judges*.

TOTH, *Judge*: We consider VA's regulation governing periodic certification of continued eligibility to receive benefits, specifically, the portion that states: "When the required certification is received, benefits will be adjusted, if necessary, in accordance with the facts found." 38 C.F.R. § 3.652(b) (2019). In this case, VA issued a rating decision certifying a veteran's continued eligibility to receive a total disability rating based on individual unemployability (TDIU) after he confirmed that he had not worked during the previous year. The appellant, James J. Perciavalle, represented the veteran before VA and purported to disagree with the rating decision because it didn't also address entitlement to special monthly compensation (SMC), which he thought the language quoted above required VA to do. In a May 2018 decision, the Board concluded that Mr. Perciavalle's submission did not constitute a valid, timely Notice of Disagreement (NOD) and he, therefore, was statutorily barred from receiving a contingency fee based on a subsequent award of SMC and related benefits. Mr. Perciavalle seeks review of these determinations. Because his reading of § 3.652(b) is contrary to the regulation's text and structure, we affirm.

# I. BACKGROUND

This case has its origins in the claims of Army veteran Frank Pugliano, Jr., who served in Vietnam sometime between 1968 to 1970. In 2011, the VA regional office (RO) granted him service connection and assigned disability ratings for various residuals of a cerebrovascular accident, or stroke. Among these benefits, the RO awarded TDIU and—for a three-month period ending November 1, 2008, during which the veteran required aid and attendance—SMC.[1] R. at 1227-39. In 2012, VA continued the schedular disability ratings and reiterated that SMC payments had ended in November 2008. R. at 1139-47.

More than a year later, in January 2014, the RO proposed to discontinue TDIU payments—as well as dependents' education assistance (DEA) benefits—because the veteran hadn't certified that he had been unemployed during the previous 12 months. "Our records," the RO advised, "indicate that we have not received the mandated VA Form 21-4140, Employment Questionnaire." R. at 1111. The following month, the veteran submitted the required certification form. It asked only one substantive question: "Were you employed by VA, others or self-employed at any time during the past 12 months?" R. at 1106. The veteran checked the "no" box.

Around this time, Mr. Perciavalle entered his appearance as the veteran's non-attorney representative. In an April 22, 2014, rating decision, having received VA Form 21-4140, the RO continued the veteran's entitlement to TDIU and DEA benefits.[2] R. at 1089-90. On April 30, however, Mr. Perciavalle submitted a written disagreement with the rating decision, listing the disputed issue as "Evaluation of cerebrovascular accident with coronary artery disease to include special monthly compensation (SMC)." R. at 1084. When asked to clarify, Mr. Perciavalle responded in May 2014 that, because the veteran had been hospitalized with the loss of use of his extremities and loss of bowel control since 2008, he was entitled to SMC as of that date. R. at 1079. He sent an identical letter in July 2014. R. at 1074. (Since they are identical in substance, for purposes of this appeal we can ignore the later filings and focus only on the first submission on April 30.)

---

[1] SMC is a benefit paid in addition to monthly disability compensation when "a veteran suffers additional hardships above and beyond those contemplated by VA's schedule for rating disabilities." *Breniser v. Shinseki*, 25 Vet.App. 64, 68 (2011). The monthly SMC rate depends on the type and degree of hardship caused by service-connected disabilities. *Id*. *See generally* 38 U.S.C. § 1114(k)-(s).

[2] Eligibility for DEA benefits here was completely derivative of the veteran's continued entitlement to TDIU. *See* 38 U.S.C. § 3501(a)(1)(A)(ii), (D) (DEA benefits available to the child or spouse of a person who "has a total disability permanent in nature resulting from a service-connected disability").

VA declined to recognize the submission of an NOD. Because the last rating decision to address entitlement to SMC was issued in September 2012, and because the April 2014 rating decision pertained to continuation of TDIU only, the RO advised that the April 30 submission did not constitute a timely or valid NOD. R. at 1071-73. Mr. Perciavalle initiated an appeal.

Meanwhile, however, the RO interpreted the April 30 submission as a request for an increase in compensation for stroke-related residuals. This culminated in a November 2014 decision in which the RO determined that it clearly and unmistakably erred in November 2011 by, among other things, not granting service connection for bowel incontinence and assigning a less-than-total rating for left hand and foot weakness. It assigned 100% ratings for both conditions effective July 31, 2008. The RO also awarded SMC based on loss of use of the left hand and foot effective July 31, 2008, the date when entitlement to that benefit was first shown.[3] R. at 397-411.

The RO's decision granting these benefits resulted in a past-due benefits award of almost $100,000. But the VA informed Mr. Perciavalle that he was not entitled to 20% of this award— some $19,800.35. Because a contingency fee cannot be charged in a case prior to the filing of an NOD, and because no NOD had been filed in the case that gave rise to the past-due benefits award, the RO concluded that Mr. Perciavalle was statutorily disentitled to a fee. R. at 300-04. Board review was also sought on this issue.

Ultimately, the Board agreed with the RO and determined that the purported NOD filed on April 30, 2014, was not timely or valid. The Board was "unpersuaded" by the argument that § 3.652 required reconsideration of SMC in April 2014. R. at 10. "Here, the RO did not undertake, and was not obligated to do so given its narrowly-stated focus on the veteran's entitlement to TDIU benefits, a re-evaluation of the veteran's service-connected disability ratings." R. at 11 (some capitalization altered). Accordingly, the Board also determined that Mr. Perciavalle could not claim a 20% contingency fee based on the awarded benefits because 38 U.S.C. § 5904 prevented him from charging a fee for actions he took before the filing of an NOD. This appeal followed.

## II. ANALYSIS

All the issues in this case ultimately turn on the meaning of § 3.652(b). As to the contingency fee, under the version of the statute applicable to this case, "in connection with a

---

[3] The RO separately granted entitlement to a higher rate of SMC beginning on July 30, 2009.

proceeding before the Department . . . , a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which a notice of disagreement is filed with respect to the case."[4] 38 U.S.C. § 5904(c)(1) (2012). Thus, a contingency fee is only permissible if the April 30, 2014, document submitted by Mr. Perciavalle on the veteran's behalf constitutes a valid and timely NOD as to the April 22, 2014, rating decision. At the time of the appellant's submission, an NOD was defined as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result." 38 C.F.R. § 20.201 (2014). Then, as now, such disagreement must have been filed "within one year from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1). So, the April 30 document is only a valid and timely NOD if the April 22 rating decision made—or should have made—a determination regarding entitlement to SMC. *See, e.g.*, *Anderson v. Principi*, 18 Vet.App. 371, 378 (2004) (recognizing that an NOD may challenge "an RO's failure to address a claim or matter reasonably raised to it").

Mr. Perciavalle's argument, that the April 22, 2014, rating decision should have addressed SMC, is based on § 3.652. That regulation, which remains unchanged since 2014, states:

Except as otherwise provided:

(a) Individuals to whom benefits are being paid are required to certify, when requested, that any or all of the eligibility factors which established entitlement to the benefit being paid continue to exist. The beneficiary will be advised at the time of the request that the certification must be furnished within 60 days from the date of the request therefor and that failure to do so will result in the reduction or termination of benefits.

(1) If the certification is not received within 60 days from the date of the request, the eligibility factor(s) for which certification was requested will be considered to have ceased to exist as of the end of the month in which it was last shown by the evidence of record to have existed. For purposes of this paragraph, the effective date of reduction or termination of benefits will be in accordance with §§ 3.500 through 3.504 as in effect on the date the eligibility factor(s) is considered to have ceased to exist. The claimant will be advised of the proposed reduction or termination of benefits and the

---

[4] In 2017, Congress amended this provision to allow a fee to be charged from the date notice is issued of an initial decision by the agency of original jurisdiction. Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, § 2(n), 131 Stat. 1105, 1110. However, that amendment does not apply in this case. *See id.* § 2(x)(1), 131 Stat. at 1115.

date the proposed action will be effective. An additional 60 days from the date of notice of the proposed action will be provided for the claimant to respond.

(2) If the certification is not received within the additional 60 day period, the proposed reduction or termination of benefits will be put into effect.

(b) When the required certification is received, *benefits will be adjusted, if necessary, in accordance with the facts found*.

38 C.F.R. § 3.652 (emphasis added). Per the appellant, the italicized text is neither "ambiguous" nor "limiting." Appellant's Br. at 7. Because the "plain language" of the regulation broadly requires "that benefits be adjusted in accordance with the facts found," Mr. Perciavalle asserts that, as part of its decision to certify continued eligibility for TDIU, the RO was obliged to consider whether the veteran should receive SMC. *Id*.

Section 3.652 has only been cited twice in our caselaw and never discussed in substance. The interpretation of a regulation is a legal question that we review de novo, without deference to the Board's conclusions. *See Moody v. Wilkie*, 30 Vet.App. 329, 336 (2018). In regulatory interpretation, the Court uses the "traditional tools of construction," carefully considering "the text, structure, history, and purpose of a regulation." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (internal quotation marks omitted). When a regulation's meaning is clear from its text, a Court's analysis need not go any further. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016).

The meaning of § 3.652(b) is plain when the provision's language is read in the context of the whole section. The first two sentences of subsection (a) lay the groundwork for subsection (b). The regulation begins by stating that, when an individual is "required to certify . . . that any or all of the eligibility factors which established entitlement to the benefit being paid continue to exist," failure to so certify "will result in the reduction or termination of benefits." Paragraphs (1) and (2) of subsection (a) explain the mechanics of how benefits are reduced or terminated if certification is not received within 60 days. Subsection (b), however, advises that "[w]hen" certification is timely received, "benefits will be adjusted, if necessary, in accordance with the facts found." The most natural understanding of the overall provision is that a benefit to be reduced or terminated under paragraphs (1) and (2) *or* to be adjusted under subsection (b) must be one for which certification was requested in subsection (a).

5

This is confirmed by a closer reading of subsection (b) itself. "When the required certification is received . . ." is a dependent clause that modifies the verb "will be adjusted" in the independent clause that follows. *See* CHICAGO MANUAL OF STYLE §§ 5.201, 5.225 (17th ed. 2017). In a sentence like subsection (b), "the independent clause states a mandatory rule, while the dependent clause states when that rule applies." *In re Rowe*, 750 F.3d 392, 396 (4th Cir. 2014). Thus, VA's duty under (b) to adjust a benefit is triggered "[w]hen the required certification is received." This certification, recall, is to verify "that any or all of the eligibility factors which established entitlement *to the benefit being paid* continue to exist." 38 C.F.R. § 3.65(a) (emphasis added). Properly understood in this way, the benefit subject to adjustment in (b) is the benefit subject to certification in (a).

Additional support for this connection comes from the final clause of subsection (b). The requirement that any necessary adjustment performed be "in accordance with the facts found" clearly relates back to the "eligibility factors" whose continued existence under subsection (a) the claimant is being asked to certify. Since the only facts that certification can be expected to generate will pertain to the benefit for which certification is sought, VA's duty to consider adjustment under § 3.652(b) cannot reasonably be read to extend beyond that benefit.

To the extent Mr. Perciavalle contends that there is something special about SMC that imposes a unique obligation on VA in this case to consider it in the § 3.652(b) context, we are unpersuaded. It is true that SMC benefits "are to be accorded when a veteran becomes eligible without need for a separate claim." *Bradley v. Peake*, 22 Vet.App. 280, 296 (2008). VA's *Adjudication Procedures Manual* (M21-1) has long treated SMC as an "ancillary benefit" or "inferred issue," meaning that adjudicators must consider a claimant's entitlement to it even where it was "not specifically placed at issue by the claimant." *Akles v. Derwinski*, 1 Vet.App. 118, 121 (1991).

But this does not mean that VA must consider SMC whenever it makes *any* determination relating to benefits. The duty arises when the potential for SMC is "identified upon review of the claims folder during the decision-making process for an expressly claimed issue. . . . based on a sympathetic reading of the claimant's statements and/or evidence of record." M21-1, Pt. III, sbpt. iv, ch. 6, sec. B.1.c. Mr. Perciavalle doesn't point to any statement or evidence before the RO during its April 2014 determination of continued eligibility for TDIU that implicated SMC. All the cases cited by the appellant regarding VA's obligation to consider SMC on its own were ones

6

in which a veteran was expressly seeking higher or increased ratings. *See, e.g.*, *Bradley*, 22 Vet.App. at 289 (noting the veteran's disagreement with the RO's failure to consider SMC benefits while adjudicating "increased rating claim[s] for multiple scar disabilities"); *Akles*, 1 Vet.App. at 121 ("[T]he RO should have inferred from the veteran's request for an increase in benefits involving a creative organ a request for special monthly compensation . . . ."); *cf. Payne v. Wilkie*, __ Vet.App. __, __, No. 17-3439, 2019 WL 3757614, at *8 (Vet. App. Aug. 9, 2019) ("[T]he Board erred when it declined to adjudicate the explicitly raised issue of entitlement to SMC(k)."). Since we have already explained that the scope of VA's § 3.652(b) adjustment obligation did not require a general reassessment of the veteran's potential entitlement to benefits, the appellant hasn't shown why SMC, even as an ancillary benefit, should have been addressed in the April 2014 rating decision.

Throughout our analysis of § 3.652, we have sometimes used the singular "benefit" and other times used the plural "benefits." This stems from the regulation itself, which in its first line refers to both "benefits . . . being paid" and "benefit being paid." 38 C.F.R. § 3.652(a). Mr. Perciavalle seems to rely on subsection (b)'s statement that "*benefits* will be adjusted" to argue that VA must under the regulation consider other benefits in addition to the one being certified.

As a general proposition, however, he reads too much into the use of the plural. Absent contrary indication, "the singular includes the plural (and vice versa)." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 129 (2012). Drafters of legal texts "can use either the singular or the plural knowing that judges will treat each as including the other unless the context indicates otherwise. Statutes and regulations are long enough as they are without forcing drafters to include both the singular and the plural every time." *N. Ill. Serv. Co. v. Perez*, 820 F.3d 868, 870 (7th Cir. 2016) (internal quotation marks omitted). In other words, context is key. Here, for example, subsection (b)'s use of the plural "benefits" was grammatically apt because certification requested for the veteran's continued unemployment established his continued eligibility for two distinct but related benefits: TDIU and DEA. In other circumstances, though, requested certification may relate only to the continued eligibility for one specific benefit. In sum, the plural word "benefits" in subsection (b) does not, by itself, undermine what we think is the best interpretation of § 3.652 based on its overall text and structure.

Although we could stop here, it's also worth noting that Mr. Perciavalle's reading of the regulation is in tension with its purpose as set forth in the *Federal Register*. *See, e.g.*, *Nat'l Org. of*

*Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 927 F.3d 1263, 1266 (Fed. Cir. 2019) (consulting VA's *Federal Register* entries to ascertain a regulation's purpose). At the time of title 38's initial codification, § 3.652 applied only to domestic matters, such as a veteran's marital status, custody of children, and the dependency of parents. *See* 26 Fed. Reg. 1561, 1598-99 (Feb. 24, 1961). In January 1987, VA proposed to amend the section "to broaden the scope of authority to require certification of the continued existence of any eligibility factor by any VA beneficiary when such factor is directly related to the amount of benefits being paid" and "the need for such certification is identified." 52 Fed. Reg. 2559, 2559 (Jan. 23, 1987) (proposed rule). This was because many beneficiaries were not notifying VA that factors affecting their benefits eligibility had changed. *See id.*

During the notice period, a commentator worried that "the authority granted by the amendment is broader than that which is required to serve the purpose" and "condones the tendency to make requests for certification on a more frequent basis than necessary." 52 Fed. Reg. 43,062, 43,062 (Nov. 9, 1987) (final rule). VA thought this an overzealous reading of the proposed revisions. The amendment, VA responded, permitted "periodic requests" for information regarding continued eligibility only "when a need to do so is identified." *Id*. The proper frequency of such requests would be determined "through the experience of accumulated data." *Id*.

VA's response is informative, not only because it clarifies the regulation's purpose, but because it recognizes that an overbroad reading of the agency's authority under § 3.652(b) to adjust benefits in the certification context could have unfavorable consequences for beneficiaries. Mr. Perciavalle's interpretation of § 3.652(b) is similarly double edged. Benefits can be "adjusted" down as well as up. And if § 3.652(b) imposes on VA an obligation to generally reassess an individual's eligibility for benefits, there is no reason why that obligation would not extend to authorizing VA to reduce or discontinue benefits not directly related to the certification. Since VA long ago denounced this sort of reading as inconsistent with the regulation's purpose, we find yet another reason to reject the appellant's argument that § 3.652(b) required VA to consider entitlement to SMC in these circumstances.

\*    \*    \*

In sum, the Court concludes that the RO's obligation under § 3.652(b) to adjust benefits after receiving the veteran's certification of continued eligibility for TDIU based on his unemployment did not require it to consider the veteran's eligibility for SMC. Consequently, the

April 30, 2014, filing—which alleged that the RO failed to consider SMC—was not a valid NOD. VA therefore properly construed the April 30 filing as a new claim, making its November 2014 award of SMC part of a new case. And because an NOD had yet to be filed in that case, the applicable version of section 5904 prohibited Mr. Perciavalle from being paid a contingency fee based on the award of past-due benefits.

## III. CONCLUSION

Finding no error, the Court AFFIRMS the May 23, 2018, Board decision.